No. 91–5655. O'DELL *v.* THOMPSON, WARDEN, ET AL. Sup. Ct. Va. Certiorari denied.

Opinion of JUSTICE BLACKMUN, with whom JUSTICE STEVENS and JUSTICE O'CONNOR join, respecting the denial of the petition for writ of certiorari.

This is a capital case. Since the present Term began on October 7, 1991, the Court has considered 102 capital petitions, each seeking review of a decision of a State's highest court. Even if practical considerations did not preclude review on the merits of all such petitions, another consideration often argues against granting certiorari: In many of these cases, a federal habeas proceeding is necessary to develop further the petitioner's claims, both factually and legally. This is one such case. Because I believe the evidence raises serious questions about whether petitioner was guilty of the charged crime or was capable of representing himself, I write to underscore the importance of affording petitioner meaningful federal habeas review.

On February 5, 1985, a woman was murdered in a field behind the After Midnight Club in Virginia Beach, Va. Petitioner O'Dell had been at that bar during the evening. There was no evidence that he previously had known the woman or that they had spoken or departed together. O'Dell left the bar some time after the victim did and went to another bar where he got into a fight. The following day, O'Dell arrived at his former girlfriend's house. Thereafter, the former girlfriend found bloodstained clothing in her garage and turned it over to the police. O'Dell was charged with murder.

Shortly before the trial, the court excused O'Dell's public defender because of an unspecified conflict. A new attorney was appointed, but O'Dell sought permission to proceed *pro se* after the attorney acquiesced in the Commonwealth's motion to have

O'Dell examined by a court-appointed psychiatrist.[1] Following his examination by a local psychiatrist, the court found O'Dell competent to proceed *pro se* and ordered the attorney to act as standby counsel. Several times during the trial, the judge commented on O'Dell's inability to "emotionally control" himself, see, *e. g.*, 22 Tr. 44, and on one occasion informed O'Dell that his outbursts "concern me as to whether you are in fact in need of a reevaluation." 23 Tr. 21. Despite entreaties by standby counsel, the court refused to order a reevaluation.

The Commonwealth's evidence at trial consisted of tire tracks that were "similar" to those left by petitioner's car, blood tests, and testimony by a fellow inmate that O'Dell had confessed to committing the murder. The court refused O'Dell's request for a hearing on the reliability of the blood tests and allowed the technician to opine that the blood samples taken from O'Dell's shirt and jacket were consistent with samples taken from the victim. The court also denied O'Dell's proffer of evidence that the informant had offered to manufacture evidence in other trials as a means of avoiding prison terms.[2] O'Dell was convicted and sentenced to death. The conviction and sentence were upheld on appeal.

O'Dell continued to maintain his innocence during state habeas proceedings. He introduced the results of DNA testing that demonstrated that the blood found on his shirt either was not the victim's or could not reliably be linked to the victim. O'Dell also argued that the trial court erred in allowing him to represent himself, given his history of mental illness and his behavior at trial. See *Faretta* v. *California*, 422 U. S. 806 (1975); *Drope* v. *Missouri*, 420 U. S. 162, 181 (1975). The Virginia Circuit Court denied state habeas relief, specifically holding that the fact that current testing methods would have produced a different result does not justify the issuance of a writ of habeas corpus. The state court also ruled that O'Dell had been competent to represent himself.[3]

---

[1] O'Dell previously had been diagnosed as a paranoid schizophrenic and had engaged in erratic behavior prior to trial.

[2] Subsequent to O'Dell's trial, the informant was given three years' probation on a breaking and entering charge, despite contrary assurances by the prosecution to petitioner's counsel and the court.

[3] Petitioner raised a number of other substantial federal claims, including a challenge to remarks made in the prosecutor's closing argument that petitioner previously had violated his parole. Standby counsel had complained

Following the denial of state habeas relief by the Virginia Circuit Court, O'Dell filed a timely notice of appeal with the Virginia Supreme Court. Having interpreted the relevant subsection of the Virginia Code as providing for an appeal as of right, O'Dell's counsel then filed timely assignments of error.[4] On March 6, 1991, a week after the filing deadline, the Deputy Clerk of the Virginia Supreme Court and the attorney for the Commonwealth informed petitioner's counsel that, in their opinion, O'Dell did not have an appeal as of right and thus O'Dell also needed to file a petition for appeal. At the same time, the Commonwealth's attorney allegedly informed petitioner's counsel that he would not oppose O'Dell's supplementation of his filings with the additional document. Two days later, however, when O'Dell filed a motion to perfect his appeal, the Commonwealth opposed the motion. On March 15, O'Dell filed his petition for appeal. On April 1, the Virginia Supreme Court denied O'Dell's motion and rejected his appeal. The Commonwealth now argues that the Virginia Supreme Court's rejection of O'Dell's appeal bars review of the merits of the federal questions raised by O'Dell in the Commonwealth's courts.

The Virginia Supreme Court's dismissal of O'Dell's habeas petition should not deprive a federal habeas court of jurisdiction.

---

to the trial court that the argument was made in such a way as to convince the jury that it had only two options: either sentence petitioner to death or turn him loose on the streets to kill again. In fact, petitioner could receive only the death sentence or life without parole. The trial court refused petitioner's request for a curative instruction or a chance to rebut the prosecutor's misleading statements. In his state habeas proceedings, petitioner argued that the trial court had violated *Gardner* v. *Florida*, 430 U. S. 349 (1977), which held that a defendant is denied due process of law when his death sentence is imposed, at least in part, on the basis of information that he had no opportunity to deny or explain. The Virginia Circuit Court held that this challenge was barred by res judicata under *Hawks* v. *Cox*, 211 Va. 91, 175 S. E. 2d 271 (1970).

[4] A Virginia statute provides that a habeas decision in a capital case is appealable directly to the Virginia Supreme Court. See Va. Code Ann. § 17-116.05:1(B) (1988); *Hill* v. *Commonwealth*, 8 Va. App. 60, 69, 379 S. E. 2d 134, 139 (1989). The wording of this statute—"appeals lie directly to the Supreme Court"—suggests an appeal as of right, rather than a discretionary petition for appeal. The other categories of cases listed in this subsection require the filing of assignments of error, not a petition for appeal.

Under *Ake* v. *Oklahoma*, 470 U. S. 68, 74–75 (1985), the Virginia Supreme Court's rejection may not be based on an independent state ground because *Tharp* v. *Commonwealth*, 211 Va. 1, 175 S. E. 2d 277 (1970), requires the Virginia Supreme Court to consider whether a constitutional right was abridged before denying an extension of time for filing a petition for appeal.[5] The Virginia Supreme Court's rejection of O'Dell's appeal may also be an inadequate state ground. In *James* v. *Kentucky*, 466 U. S. 341 (1984), this Court held that only firmly established state procedural rules interpose a bar to the adjudication of federal constitutional claims. The ambiguity of the Virginia statute, Va. Code Ann. § 17–116.05:1B (1988), as to whether capital appeals are discretionary or as of right may preclude its use as a procedural bar.[6] See also *Ford* v. *Georgia*, 498 U. S. 411 (1991) (state practice must be firmly established and regularly followed in order to prevent subsequent review by this Court); *NAACP* v. *Alabama ex rel. Flowers*, 377 U. S. 288, 297 (1964) (application of procedural rule was pointless, severe, and consequently inadequate as jurisdictional bar to review).

Finally, federal review of O'Dell's claims is possible if it is necessary to prevent a fundamental miscarriage of justice, see *Coleman* v. *Thompson*, 501 U. S. 722, 757 (1991), or if the constitutional violation caused the conviction of an innocent person. See *McCleskey* v. *Zant*, 499 U. S. 467, 502 (1991).

In short, there are serious questions as to whether O'Dell committed the crime or was capable of representing himself—questions rendered all the more serious by the fact that O'Dell's life depends upon their answers. Because of the gross injustice that

---

[5] While this Court rejected a similar argument in *Coleman* v. *Thompson*, 501 U. S. 722, 742 (1991), this case may be distinguishable. *Coleman* dealt with an untimely *notice* of appeal, not an untimely *petition* for appeal. Since the notice and assignments were timely, the Commonwealth was not unaware of petitioner's arguments, as it arguably was in *Coleman*. The Commonwealth's initial willingness to extend petitioner's time to perfect his appeal provides additional evidence that Virginia can waive the untimeliness rule when fundamental constitutional issues are at stake.

[6] As has been noted, see n. 4, *supra*, the wording of this statute—"appeals lie directly to the Supreme Court"—suggests an appeal as of right, rather than a discretionary petition for appeal. According to petitioner's counsel, even the Clerk's office and the Commonwealth's attorney were uncertain as to whether petitioner was entitled to an appeal as of right.

would result if an innocent man were sentenced to death, O'Dell's substantial federal claims can, and should, receive careful consideration from the federal court with habeas corpus jurisdiction over the case.