8 F.3d 556
 David A. WILLIS, Petitioner-Appellant,
v.
James E. AIKEN, Commissioner, Indiana Department of
Corrections, Porter Superior Court and Linley E.
Pearson, Attorney General of Indiana,
Respondents-Appellees.
 No. 92-1098.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 29, 1992.
Decided Oct. 29, 1993.
 
 James M. Shellow (argued), Dean A. Strang, Shellow, Shellow & Glynn, Anne W. Reed, Reinhart, Boerner, Van Deuren, Norris & Rieselbach, Milwaukee, WI, for petitioner-appellant.
 Ronald J. Semler, Asst. Atty. Gen., Office of the Atty. Gen., Federal Litigation, Indianapolis, IN (argued), for respondents-appellees.
 William A. Pangman, Pangman & Associates, Waukesha, WI, for amicus curiae.
 Before RIPPLE and KANNE, Circuit Judges, and LEINENWEBER, District Judge.*
 RIPPLE, Circuit Judge.
 
 
 1
 The petitioner, David Willis, seeks federal habeas relief from a conviction entered by an Indiana state court. Mr. Willis submits that his right to due process of law guaranteed by the Fourteenth Amendment has been violated because the state trial court gave an Indiana pattern jury instruction that states, in part, that "the jury is both the judge of the law and of the facts." The district court dismissed the petition on procedural grounds before reaching the merits. For the reasons that follow, we affirm the judgment of the district court.
 
 
 2
 * BACKGROUND
 
 
 3
 In August 1981, attorney David Willis was employed by Carol Durkin to represent her three children in litigation over her deceased former husband's life insurance proceeds. As a result of Mr. Willis' representation, on November 19, 1984, checks were issued to Durkin's children, in the amount of $14,818.46 each. The checks were mailed to Mr. Willis for distribution. He also received a separate check for $4,527.86 to cover his attorney fees. On November 30, 1984, Mr. Willis printed Steve Staton's name (one of Durkin's children), as well as his own, on the check payable to Staton and deposited it into his client trust account. That same day, Mr. Willis transferred $811.54 from his general account into his client trust account, making a total deposit of $15,630 into his client trust account on November 30. Prior to these deposits, Mr. Willis' client trust account was overdrawn in the amount of $15.39. The next day, on December 1, Mr. Willis wrote a check from his client trust fund to satisfy a personal obligation in the amount of $15,594.16.[1]
 
 
 4
 On February 18, 1985, before Mr. Willis contacted Durkin or any of her children to let them know that the lawsuit had been settled and that he had received the settlement checks, Staton appeared in Mr. Willis' office to retrieve his check. Mr. Willis gave Staton a check, drawn from his client trust account, for the sum of $14,818.46. After Staton deposited the check, it was returned to him due to insufficient funds. On April 8, 1985, after Staton had sent Mr. Willis a letter demanding payment, Staton received a cashier's check for $15,500. Subsequently, as a result of Mr. Willis' alleged misuse of client trust funds, the State of Indiana indicted him for theft.[2]
 
 II
 PRIOR PROCEEDINGS
 A. Direct Proceedings
 
 5
 In 1987, an Indiana state trial court convicted Mr. Willis of theft. He was sentenced to two years' imprisonment. Mr. Willis appealed his conviction to the state appellate court and presented six issues. Specifically, he argued on direct review that the trial court erred by: (1) considering his status as a former attorney and failing to consider mitigating circumstances; (2) refusing to grant a mistrial based upon an alleged misstatement of the law made by the prosecutor during voir dire; (3) allowing testimony regarding a prior check deception charge and related complaints filed with the Indiana Supreme Court Disciplinary Board; (4) allowing expert testimony regarding an attorney's use of client trust accounts; (5) denying him a fair trial because law books and periodicals were left in areas accessible to the jury during its deliberations; and (6) denying him a fair trial because the trial judge refused to recuse himself after allegedly engaging in ex parte communications with opposing counsel. Mr. Willis did not challenge any of the jury instructions on direct appeal, nor had he objected to the instructions at trial. The state appellate court rejected all six of Mr. Willis' state law challenges. Willis v. State (Willis I), 512 N.E.2d 871 (Ind.Ct.App.1987). Mr. Willis then petitioned the Supreme Court of Indiana, but was denied review without opinion in December 1987.
 
 B. State Postconviction Proceedings
 
 6
 Thereafter, in 1988, Mr. Willis filed a petition for habeas corpus with the state court, seeking postconviction relief. In his postconviction challenge, Mr. Willis argued, for the first time, that the trial court had committed reversible error by instructing the jurors as follows:
 
 
 7
 Since this is a criminal case the Constitution of the State of Indiana makes you the judge of both the law and the facts. Though this means that you are to determine the law for yourself, it does not mean that you have the right to make, repeal, disregard, or ignore the law as it exists. The instructions of the court are the best source as to the law applicable to this case.
 
 
 8
 Mem.Op. at 14. Specifically, Mr. Willis argued that giving the pattern jury instruction violated his due process rights because the instruction informed the jurors that they could ignore the law either by not requiring that the prosecution prove intent or by shifting the burden of proof from the prosecution to the defense. However, Mr. Willis' failure to raise this issue during his trial violated Indiana's "contemporaneous objection" rule, effectively waiving further review of the issue. Nonetheless, in Indiana, when a trial court commits a "fundamental error," a court may still grant relief despite waiver of the issue. Wilson v. State, 514 N.E.2d 282, 284 (Ind.1987). Therefore, Mr. Willis also argued that a "fundamental error" was committed in giving the instruction. The state postconviction trial court granted Mr. Willis relief and the State and Mr. Willis both appealed.[3]
 
 
 9
 In April 1990, the Indiana appellate court reversed the state trial court. State v. Willis (Willis II), 552 N.E.2d 512 (Ind.Ct.App.1990). In reversing the judgment of the postconviction trial court, the appellate court expressed the view that the instruction had not violated Mr. Willis' due process rights. However, in the course of its opinion, the court did not expressly refer to either the due process guarantee of the Indiana Constitution or the due process guarantee of the Fourteenth Amendment of the Federal Constitution. Indeed, the only explicit reference to either constitution in the three-page opinion is a brief passage noting that article I, section 19 of the Indiana Constitution states that:
 
 
 10
 In all criminal cases whatever, the jury shall have the right to determine the law and the facts.
 
 
 11
 Willis II, 552 N.E.2d at 515. The relevant portion of the opinion cites two Indiana court cases. No federal cases are cited. The Indiana court characterized the instruction at issue as an added protection for the defendant:
 
 
 12
 From a practical viewpoint, the trial court determines the law in all procedural matters, and during the trial when the jury participates in the criminal judicial process, it is the trial court judge who determines the law as to the admissibility of evidence, motions for direct acquittal, mistrial, and the granting of a new trial.
 
 
 13
 Id. Mr. Willis appealed the decision to the Supreme Court of Indiana, but further review was denied.
 
 C. Federal Habeas Proceedings
 
 14
 Mr. Willis next filed a petition for a writ of habeas corpus in federal district court. He alleged that the state conviction had been obtained in violation of his federal constitutional right to due process as guaranteed by the Fourteenth Amendment. The district court held that, absent a showing of cause and prejudice, it did not have jurisdiction to address Mr. Willis' postconviction challenge to the instruction because
 
 
 15
 [t]he [Indiana] appellate court reached this determination by way of an analysis of the Indiana Constitution and Indiana case law. Thus, the state court grounds cannot fairly be read to invoke or be intertwined with federal law. Moreover, the grounds relied upon by the appellate court were consistently applied and justified the decision rendered. Accordingly, the state grounds are adequate and independent, precluding federal habeas review absent a showing of cause and prejudice.... Willis can show no cause or prejudice for his procedural default.
 
 
 16
 Mem.Op. at 15. Although Mr. Willis raised several issues in the district court, only his challenge to the instruction informing the jury that it was the judge of both law and fact has been raised on appeal to this court and we shall limit our discussion accordingly.
 
 III
 ANALYSIS
 A. Independent and Adequate State Ground
 1.
 
 17
 In general, federal courts cannot review on petition for writ of habeas corpus questions of federal law that have not been properly presented to the state court. Under this principle, if a state court did not reach a federal issue because it applied, evenhandedly, a state procedural rule, the matter is closed to the federal habeas court absent a showing of cause and prejudice. Wainwright v. Sykes, 433 U.S. 72, 90-91, 97 S.Ct. 2497, 2508-09, 53 L.Ed.2d 594 (1977).
 
 
 18
 Indiana has a procedural rule requiring that an objection to a jury instruction be made in the trial court in order to preserve the issue for appeal. Absent such an objection, the issue is waived and further review is barred. When, under this contemporaneous rule, the state court declines to review an issue not properly preserved, the state court decision rests upon a state law ground that is both "independent of the federal question and adequate to support the judgment." Coleman v. Thompson, --- U.S. ----, ---- - ----, 111 S.Ct. 2546, 2553-54, 115 L.Ed.2d 640 (1991). In such a situation, a subsequent ruling on the substantive federal question by the United States district court is precluded. Otherwise, the decision would be merely advisory because, regardless of the decision by the district court, the state disposition would stand; it rests on an independent and adequate state law ground. Id. at ----, 111 S.Ct. at 2554.[4] The independent and adequate state law ground may be based either upon substantive state law or upon a violation of state procedural rules. Harris v. Reed, 489 U.S. 255, 261, 109 S.Ct. 1038, 1042, 103 L.Ed.2d 308 (1989). For a state procedural ground to bar review, the state court actually must have relied upon the procedural bar as an independent basis for its disposition of the case.
 
 
 19
 The Supreme Court has recognized that it is not always clear from the face of a state court opinion whether the state court actually relied upon a state law ground or whether the state reached the merits of a federal claim. The Court first addressed this problem not in the context of habeas corpus, but with respect to its own direct review of state court decisions. To avoid the federal judiciary's becoming enmeshed unnecessarily in state decisional law, the Court held that, unless a state opinion contains a "plain statement" that it relied upon an independent and adequate state law ground, a presumption arises that the federal claim was reached. Michigan v. Long, 463 U.S. 1032, 1042, 103 S.Ct. 3469, 3477, 77 L.Ed.2d 1201 (1983). Subsequently, as we shall discuss at length in the following paragraphs, the Court held that, as a general rule, this presumption also applies to federal review of state criminal judgments when they are challenged in habeas corpus proceedings. See Harris, 489 U.S. at 1043, 109 S.Ct. at 1100. In Coleman, the Court summarized this presumption:
 
 
 20
 In habeas, if the decision of the last state court to which the petitioner presented his federal claims fairly appeared to rest primarily on resolution of those claims, or to be interwoven with those claims, and did not clearly and expressly rely on an independent and adequate state ground, a federal court may address the petition.
 
 
 21
 Coleman, --- U.S. at ----, 111 S.Ct. at 2557.
 
 
 22
 However, as we also shall discuss at greater length later, the Court in Coleman cautioned that, before the Long- Harris presumption is applicable, a federal court must first ascertain that the state court decision fairly appears to rest on federal grounds or is interwoven with federal law. Thus, even when the state court does not make a "clear and express" statement that it is deciding an issue based on state law, the presumption may not automatically apply: The federal court first must determine whether the state court decision fairly appears to rest on federal grounds. Id.
 
 
 23
 This case requires that we apply these general principles to a specific but recurring litigation problem that has not yet been the focus of Supreme Court guidance: when the state court addresses a federal constitutional issue but only to determine whether it ought to disregard its waiver rule on the ground that the federal constitutional issue constitutes "fundamental error." In the following subsections, we shall examine this problem by making two inquiries. In the first, we shall put aside for the moment the specific context of waiver and "fundamental error." We shall determine, without reference to this complicating factor, whether it can be said that the Indiana court addressed the underlying substantive issue on federal constitutional grounds. In the second inquiry, we shall determine the impact of this factor on whether the state decision can be said to rest on an adequate and independent state law ground.
 
 2.
 
 24
 We begin our analysis by examining the opinion of the Indiana appellate court to determine whether, without regard to the "fundamental error" dimension of the problem, it can be said that the court addressed the substantive issue in federal constitutional terms, given the mandates of Harris and Coleman. The state intermediate appellate court chose to cast the issue in the following terms:
 
 
 25
 Willis contends that the instruction given by the trial court which informs the jury that it is the judge of the law as well as of fact denied him basic constitutional rights and due process.
 
 
 26
 Willis II, 552 N.E.2d at 514. The court then proceeded to discuss the appellant's submission by invoking the concept of "due process" without expressly identifying the terms as grounded in either the state or Federal Constitution. This ambiguity ought to suffice to invoke the presumption of Harris. There are, however, several other aspects of the state court opinion that make it even more reasonable to conclude that the Indiana court's decision "fairly appears to rest on federal grounds." Coleman, --- U.S. at ----, 111 S.Ct. at 2557. The instruction at issue is, as the Indiana court pointedly acknowledged, grounded in a provision of the Indiana Constitution. It would indeed be unusual for the appellant to argue, or for the state court to assume, that one part of the state constitution might be rendered "unconstitutional" by another section of the same document. It is far more reasonable to assume that the Indiana court understood that, under Article VI of the Federal Constitution, any interpretation of a state's due process provision must be in conformity with the Federal Constitution. Any holding that a provision of the state constitution does not deny due process must necessarily include a determination that the state constitutional provision is not violative of the Federal Constitution.
 
 
 27
 We conclude, therefore, that when considered without respect to the issue of waiver and "fundamental error," the opinion of the Indiana appellate court deals with the substantive issue of the contested jury instruction in terms of the Federal Constitution. That procedural context cannot, however, be ignored. We now turn to a consideration of the impact of that procedural context on the issue of whether the Indiana court's decision rests on an adequate and independent state law ground.
 
 3.
 
 28
 The Indiana postconviction appellate court addressed federal constitutional concerns in analyzing the appropriateness of the jury instruction. As we have just noted, however, it did so in the context of determining whether waiver of the issue through failure to object ought to be forgiven because the instruction constituted "fundamental error." We must now determine whether, in this procedural context, the Indiana appellate court's judgment can be said to rest on an independent and adequate state law ground or whether the determination of "no fundamental error" is so "interwoven," Coleman, --- U.S. at ----, 111 S.Ct. at 2557, with the federal claim as to justify federal review without a demonstration of cause and prejudice.
 
 
 29
 We have confronted the problem before. As the Supreme Court has refined the general principles of law governing the doctrine of independent and adequate state law ground, we have addressed this particular aspect of the doctrine in light of that guidance. Today, we continue our attempt to follow a path that the Supreme Court has cut only partially and where future directions are only dimly illumined by current precedent. This court first confronted this problem in a case decided prior to the Supreme Court's decision in Harris. See Phillips v. Lane, 787 F.2d 208 (7th Cir.), cert. denied, 479 U.S. 873, 107 S.Ct. 249, 93 L.Ed.2d 173 (1986). In Phillips, the state trial court had failed to instruct the jury with respect to the burden of proof on the issue of insanity at a hearing on the defendant's fitness to stand trial. On direct appeal, the Illinois state court held that the issue had been waived for failure to object at trial. The state appellate court then proceeded to consider whether this failure to instruct on the burden of proof was plain error. The court addressed the merits of the issue and ruled that the state had met its burden under the appropriate standard.
 
 
 30
 In determining whether further review of the substantive issue was permitted in a federal habeas proceeding or whether the state court judgment rested on an independent and adequate state law ground, we noted that, read literally, the decision of the Illinois court appeared to acknowledge that the defendant had a right to a determination as to whether there was plain error and to reversal if the court determined that any such error existed. However, after extended analysis, we determined that the Illinois plain error rule had no such mandatory characteristic. Rather, its invocation was a matter of grace and therefore permissive. Id. We noted that the Illinois plain error doctrine involved an assessment of whether the defendant had suffered any prejudice in the particular case and that therefore the "domain of the rule is limited to cases where the facts are so closely balanced that the error might have made a difference in outcome." Id. We therefore concluded that the Illinois courts had not intended to craft a mandatory plain error doctrine, except perhaps in the case of the error that produced a gross miscarriage of justice. We also noted the impact of a contrary rule on the law of habeas corpus:
 
 
 31
 If the existence of the plain error rule entitled a defendant to obtain review in a federal habeas corpus proceeding of plain error whatever procedural defaults he may have committed, the domain of Wainwright v. Sykes would shrink to a small area. A defendant would always have the right to ask the federal court to set aside his state conviction for plain constitutional error, even if he had failed to make timely objection in the state court.
 
 
 32
 787 F.2d at 213. Consequently, we concluded that the state judgment rested on two adequate and independent grounds--the failure to make a contemporaneous objection and the lack of any error with respect to the instructions on the burden of proof. We did not have the power to review the first ground, and we could not reach the second because any relief would leave untouched the first, and independently adequate, ground for decision. Id. at 214.
 
 
 33
 After the Supreme Court decided Harris and extended the "plain statement rule" of Long to habeas corpus cases, this court was again faced with a situation quite similar to the one in Phillips. In Rogers-Bey v. Lane, 896 F.2d 279 (7th Cir.), cert. denied, 498 U.S. 831, 111 S.Ct. 93, 112 L.Ed.2d 65 (1990), we were confronted with a case in which the defendant, Rogers-Bey, had been convicted at a state trial in which there had been no contemporaneous objection to the admission of hearsay evidence. On appeal, the Illinois appellate court held that Rogers-Bey had waived the issue. As required by Illinois law, the state appellate court additionally considered whether or not the admission of the hearsay evidence amounted to plain error. It concluded that Rogers-Bey's claim did not rise to the level of plain error because the probability of conviction remained substantial. Id. at 281. The court, however, did not make a plain statement that it was relying on the procedural default in making this assessment and denying the petitioner relief.
 
 
 34
 After the district court denied habeas relief, the case came to this court. We held:
 
 
 35
 By reaching the plain error claim after having found waiver, the court necessarily relied on two different grounds for its decision. The court gave no indication whether these grounds were independent and gave no limiting language regarding its reasons for reaching both grounds.
 
 
 36
 Id. In light of the Harris pronouncement that a plain statement is required to rebut the presumption that a state court relied on federal law, we held that the district court should consider the substantive merits of Rogers-Bey's habeas petition. In reaching this conclusion, we recognized that the Harris plain statement rule was created for the purpose of allowing the federal judiciary to determine easily the ground upon which the state court actually had relied. We pointed out that Phillips had devoted a great deal of time in attempting to determine the scope of Illinois' plain error doctrine and how it had been applied to the facts of a particular case:
 
 
 37
 Phillips, which preceded Harris, was an attempt to divine the unstated, underlying intent of the Illinois courts in reaching the plain error analysis after finding waiver in precisely the cases such as where the intent was left implicit. The Supreme Court has directed that we no longer undertake such attempts. Under Harris, the state court must say whether it is relying on the state procedural bar as an independent ground. We no longer second guess the state court's intentions--the language must be clear.... While we realize the formalism inherent in requiring a plain statement by the state court, the Supreme Court required such a statement to relieve us of the burden of undertaking the difficult inquiry ... into the unapparent intent of state courts.
 
 
 38
 Rogers-Bey, 896 F.2d at 282. In short, we concluded that "the impact of Harris on Sykes is that the state's reliance on the procedural foreclosure must be stated, and it must be stated in plain language." Id. We also noted that this approach brought with it a "formalism," but concluded that formalism was necessary "to relieve us of the burden of undertaking the difficult inquiry ... into the unapparent intent of state courts." Id.
 
 
 39
 Just as the Rogers-Bey court had to refine this circuit's law in light of the intervening Supreme Court decision in Harris, we must now reassess the situation in light of the most recent pronouncement of the Court in Coleman. At this point, we must focus on an aspect of Coleman other than the one that occupied us earlier in the analysis. Coleman argued that the Supreme Court of Virginia had applied the state procedural bar regarding time for appeal only after it had decided that the application of the bar to Coleman would not deprive him of a constitutional right. He relied on the Court's earlier decision in Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). In that case, the Court was faced with a challenge to its own jurisdiction on direct appeal. Ake, a capital murder defendant, argued, on federal constitutional grounds, that he should have been provided with the services of a court-appointed psychiatrist. The state court addressed the claim on the merits, but then held that the defendant had waived the issue by failing to renew it in his motion for a new trial. In its brief before the Supreme Court of the United States, the State of Oklahoma submitted that the issue was not properly before the Court because the state court's decision rested on the adequate and independent state law ground of waiver for failure to comply with the state procedural requirement that the issue be presented at the motion for new trial. The Supreme Court rejected this contention. It determined that Oklahoma's waiver rule did not apply to fundamental trial error and that, under Oklahoma law, federal constitutional errors are considered "fundamental." Thus the state had made the invocation of the procedural bar depend on the resolution of the federal constitutional question. Therefore, held the Court, the invocation of the procedural rule is not independent of the federal constitutional ruling. Id. at 75, 105 S.Ct. at 1092.
 
 
 40
 In rejecting the application of Ake to Coleman, the Supreme Court ultimately noted that Ake was not applicable because, under Virginia law, the state supreme court would only have granted the time extension if it had determined that the denial of the time extension itself would have abridged a constitutional right. Coleman, --- U.S. at ----, 111 S.Ct. at 2560. It would not have examined, as Coleman had contended, the underlying federal constitutional argument. Moreover, the Court wrote:Ake was a direct review case. We have never applied its rule regarding independent state grounds in federal habeas. But even if Ake applies here, it does Coleman no good because the Virginia Supreme Court relied on an independent state procedural rule.
 
 
 41
 Id.
 
 
 42
 This statement by the Supreme Court of the United States cannot be ignored by a lower federal court, bound not only by the letter but by the spirit of the doctrines of stare decisis and precedent. While the statement is technically dicta, it nevertheless raises a significant question as to whether there is absolute symmetry between Long and Harris. The Court in Harris said that, in adopting the plain statement rule for habeas corpus as it had in Long for its own jurisdiction over state cases, it was faced "with a common problem" and therefore was adopting "a common solution." Harris, 489 U.S. at 1043, 109 S.Ct. at 1100. The above noted language in Coleman suggests, however, that it is an open question as to whether the invocation of fundamental error, or similar exception, to mitigate the effect of a state waiver rule always will suffice to avoid the strictures of Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). The ultimate answer to this quandary can, of course, only be supplied by the Supreme Court. As Coleman suggests, the answer may be somewhat more nuanced than Harris suggested. For the present, however, we need only determine, on the basis of the available precedent, the appropriate solution to the particular situation before us. In this regard, another aspect of Coleman, encountered briefly at an earlier point in our analysis, provides a helpful guide.
 
 
 43
 In addition to summarizing the presumption of Harris, the Court in Coleman also cautioned that, before the Harris presumption is applicable, a court must first ascertain whether the state court decision fairly appears to rest on federal grounds or is interwoven with federal law. In short, Coleman admonished that conclusive presumptions such as the one in Harris ought to be employed only when the generalization upon which they are based is correct as an empirical matter:
 
 
 44
 The Long and Harris presumption works because in the majority of cases in which a state court decision fairly appears to rest primarily on federal law or to be interwoven with such law, and the state does not plainly state that it is relying on an independent and adequate state ground, the state court decision did not in fact rest on an independent and adequate state ground. We accept errors in those small number of cases where there was nonetheless an independent and adequate state ground in exchange for a significant reduction in the costs of inquiry.
 
 
 45
 Coleman, --- U.S. at ----, 111 S.Ct. at 2558. The tradeoff is very different, continued the Court, when it does not appear that the state decision rested primarily on federal grounds. In such a situation, it simply is not true that the most reasonable explanation is that the state court decided the case on a federal ground. Therefore, held the Court, the presumption of Harris ought to apply only when "a federal court has good reason to question whether there is an independent and adequate state ground for decision." Id. at ----, 111 S.Ct. at 2559.
 
 
 46
 The Court elaborated further on the practical impact of an overly rigid application of the presumption in Harris:
 
 
 47
 A broad presumption would also put too great a burden on the state courts. It remains the duty of the federal courts ... to determine the scope of the relevant state court judgment. We can establish a per se rule that eases the burden of inquiry on the federal courts in those cases where there are few costs to doing so, but we have no power to tell state courts how they must write their opinions. We encourage state courts to express plainly ... the grounds upon which [their] judgment[s] rest[ ], but we will not impose on state courts the responsibility for using particular language....
 
 Id.[5]
 
 48
 After Coleman, we believe that the formalism of which we spoke in Rogers-Bey is no longer the controlling factor. We also believe that, because it remains our duty "to determine the scope of the relevant state court judgment," id., it is permissible for us to examine the caselaw of Indiana to determine the function that the fundamental error doctrine plays in its appellate process.[6] More precisely, we must determine whether its use can be said to amount to an expression of willingness on the part of the state to forgive an earlier procedural default and to rest its decision on the federal issue.
 
 
 49
 As the parties' submissions to us amply demonstrate, the caselaw dealing with the Indiana fundamental error doctrine is labyrinthine. It is clear, however, that, while it encompasses matters of federal constitutional law, it also involves state constitutional, statutory, and common law issues as well. Moreover, not all federal constitutional errors are deemed fundamental. Wilson v. State, 514 N.E.2d 282, 284 (Ind.1987). In determining whether an error is fundamental, the courts of the state have employed a variety of formulas. In Wilson, the Supreme Court of Indiana wrote:
 
 
 50
 To survive the procedural requirements, the error must constitute a blatant violation of basic principles, the harm or potential for harm must be substantial, and the resulting error must deny the defendant fundamental due process.
 
 
 51
 Id. Several months before its decision in Wilson, the Court wrote that, in order to constitute fundamental error, the defendant must demonstrate that, "had a proper objection been made, the trial court would have had no choice but to sustain the objection." Brockway v. Indiana, 502 N.E.2d 105, 108 (Ind.1987); accord Reynolds v. Indiana, 460 N.E.2d 506, 508 (Ind.1984) ("the error must constitute a clearly blatant violation of the most basic and elementary principles, and the harm or potential for harm therefrom must be substantial and appear clearly and prospectively"). These cases demonstrate that the principle of fundamental error in Indiana law involves an assessment not only of the substantive rights at stake but also of their impact on the particular trial. While there have been occasions in which Indiana courts have looked to a federal court's assessment of federal rights to "corroborate" its own assessment, see Winston v. State, 165 Ind.App. 369, 332 N.E.2d 229, 233 (1975), there is no discernible pattern of dependency on federal court assessment of a particular error as "fundamental." Rather, the term, as employed in the Indiana cases, appears to be a term of art employed on a fact-specific basis for the purpose of determining whether to excuse noncompliance with the requirement that a timely objection be made on the record. Indeed, Winston emphasizes how closely the fundamental error doctrine is tied to the state procedural rule requiring a proper objection. In that case, the Indiana appellate court noted that, when the error is one that rests solely within the responsibility of the trial judge "in his sua sponte obligations," 332 N.E.2d at 233, the policy concerns against the invocation of the fundamental error doctrine are less weighty than when the error involves an area in which counsel has the prime responsibility for raising the matter. In the latter case, the court noted, the importance of the timely objection rule ought to weigh far more heavily because the court is dependent on counsel to appreciate the full significance of the error:
 
 
 52
 The connection between the policy favoring speedy correction of prejudicial errors so as to avoid needless mistrials and the timely objection rule as to the introduction of evidence is close and substantial; the nexus between policy and rule as to the trial court's affirmative duties is more remote. Recognition of this difference explains the court's comparative reluctance to disregard the appellant's failure to timely object, and review the alleged error by calling it "fundamental", respecting evidentiary errors, as opposed to errors in the trial judge's discharge of his sua sponte obligations.
 
 
 53
 Id.
 
 
 54
 We believe that these cases demonstrate that, in determining whether an error constitutes a "fundamental error," the state courts of Indiana engage in a very particularized assessment of the impact of the error on the particular case. Characterizing the error as "fundamental" appears to be far more a function of the error's relationship to the policy concerns animating the state's timely objection requirement than of federal constitutional policy concerns. We therefore find ourselves confronted with a situation very much like the one that faced our colleagues on the Court of Appeals for the Tenth Circuit in their examination of New Mexico's fundamental error law in Gutierrez v. Moriarity, 922 F.2d 1464 (10th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 140, 116 L.Ed.2d 106 (1991). Like New Mexico, but unlike Oklahoma, the jurisdiction that produced Ake, Indiana does not equate federal constitutional error with fundamental error. Like New Mexico, Indiana mandates review on the merits of fundamental rights claims only when the denial of the right "gives rise to a question of fundamental error as defined by state law." Gutierrez, 922 F.2d at 1469 (emphasis supplied).
 
 
 55
 Accordingly, we believe that the determination of the Indiana appellate court, that no fundamental error resulted from the instruction, rests on an independent and adequate state ground. We therefore hold that habeas review in the federal courts is, as the district court determined, precluded.
 
 B. New Rule
 
 56
 Because the foregoing discussion involves an issue on which there is no definitive guidance from the Supreme Court, see Coleman, --- U.S. at ----, 111 S.Ct. at 2560; O'Dell v. Thompson, --- U.S. ----, ---- - ----, 112 S.Ct. 618, 619-20, 116 L.Ed.2d 639 (1991) (statement of Blackmun, J., respecting the denial of certiorari), we shall not end our discussion with that point. We also hold that, even if the jury instruction issue did not rest on an independent and adequate state law ground, consideration of the issue by the district court would have been precluded by the holding of the Supreme Court in Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).
 
 
 57
 In Teague, the Supreme Court adopted the view first propounded by Justice Harlan in Mackey v. United States, 401 U.S. 667, 692-93, 91 S.Ct. 1160, 1179-80, 28 L.Ed.2d 404 (1971), that habeas courts should generally only apply the constitutional standards that prevailed at the time the original proceedings took place. Indeed, as formulated by the Court, this rule of nonretroactivity for cases on collateral review has only two exceptions:
 
 
 58
 First, a new rule should be applied retroactively if it places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." Second, a new rule should be applied retroactively if it requires the observance of "those procedures that ... are 'implicit in the concept of ordered liberty.' "Teague, 489 U.S. at 307, 109 S.Ct. at 1073 (citations omitted). Thus, we must first determine whether granting the relief that Mr. Willis seeks would require us to announce a new rule. If we conclude that it would, then we may not reach the merits of his claim unless the rule he seeks falls within one of the two exceptions adopted in Teague.
 
 
 59
 The Supreme Court recently had occasion to decide a case involving arguments somewhat similar to Mr. Willis' contentions. See Gilmore v. Taylor, --- U.S. ----, 113 S.Ct. 2112, 124 L.Ed.2d 306 (1993). In Gilmore, the Court was presented with the question whether a decision by this circuit that invalidated an Illinois pattern instruction because it unconstitutionally allowed a jury to return a murder verdict without considering whether the defendant had a mitigating mental state that would support a verdict of voluntary-manslaughter, announced a new rule and thus could not provide the basis for habeas relief under Teague. The Court noted that
 
 
 60
 a decision announces a new rule "if the result was not dictated by precedent existing at the time the defendant's conviction became final." ... "The 'new rule' principle ... validates reasonable, good-faith interpretations of existing precedents made by state courts," and thus effectuates the states' interest in the finality of criminal convictions and fosters comity between federal and state courts.
 
 
 61
 Gilmore, --- U.S. at ----, 113 S.Ct. at 2116 (citations omitted) (emphasis in the original).[7]
 
 
 62
 We certainly do not want to be misunderstood as condoning the problematic instruction at issue in this case. Nevertheless, it would not be appropriate for us to conclude that the decision reached by the Indiana appellate court in Willis II, on the basis of the established caselaw of the Supreme Court of Indiana and not in contravention of any explicit precedent of this court or, more importantly, the Supreme Court of the United States, was not a "reasonable, good-faith interpretation[ ] of existing precedents made by [the] state courts." See id. The matter was " 'susceptible to debate among reasonable minds.' " Sawyer v. Smith, 497 U.S. 227, 241, 110 S.Ct. 2822, 2834, 111 L.Ed.2d 193 (1990) (quoting Butler v. McKellar, 494 U.S. 407, 415, 110 S.Ct. 1212, 1217, 108 L.Ed.2d 347 (1990)). Thus, to grant Mr. Willis the relief he seeks we would have to announce a new rule.
 
 
 63
 As we have already noted, under Teague, we cannot announce such a rule on collateral review unless it falls within one of the two narrow exceptions set forth by the Court. The first exception applies to rules that " 'place certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe.' " Gilmore, --- U.S. at ----, 113 S.Ct. at 2119 (quoting Teague, 489 U.S. at 307, 109 S.Ct. at 1073). This exception is inapplicable to Mr. Willis, as the rule he seeks does not "decriminalize" any class of conduct. The second exception under which Teague permits the consideration of a new rule on collateral review concerns only " 'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." Gilmore, --- U.S. at ----, 113 S.Ct. at 2119 (quoting Teague, 489 U.S. at 311, 109 S.Ct. at 1075). We are aware that the Supreme Court has held recently that an instruction relieving the state of the burden of proof beyond a reasonable doubt cannot be characterized as harmless error. See Sullivan v. Louisiana, --- U.S. ----, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). Yet, we do not believe that the instruction at issue here, whatever its potential for confusion, can be said to fall into that " 'small core of rules implicit in the concept of ordered liberty.' " Gilmore, --- U.S. at ----, 113 S.Ct. at 2119 (quoting Graham v. Collins, ---- U.S. ----, ----, 113 S.Ct. 892, 903, 122 L.Ed.2d 260 (1993)). Accord Sawyer, 497 U.S. at 243, 110 S.Ct. at 2832; Saffle v. Parks, 494 U.S. 484, 495, 110 S.Ct. 1257, 1264, 108 L.Ed.2d 415 (1990); Williams v. Chrans, 945 F.2d 926, 942 (7th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 3002, 120 L.Ed.2d 877 (1992).
 
 
 64
 Accordingly, because awarding the relief that Mr. Willis seeks would require us to announce a rule that would be "new" within the meaning of Teague, and does not fall into one of Teague's two narrow exceptions, we cannot reach the merits of Mr. Willis' request in a habeas proceeding.
 
 Conclusion
 
 65
 For the foregoing reasons, the decision of the district court is affirmed.
 
 
 66
 AFFIRMED.
 
 
 
 *
 The Honorable Harry D. Leinenweber from the United States District Court for the Northern District of Illinois sitting by designation
 
 
 [1]
 This obligation was the result of a plea agreement entered into between Mr. Willis and the State of Indiana on August 31, 1984. The plea agreement arose from a check deception charge filed against Mr. Willis on March 30, 1984. Under the agreement, the check deception charge would be dismissed if Mr. Willis made restitution within ninety days; otherwise he would be convicted of check deception and would be imprisoned for thirty days
 
 
 [2]
 Prior to trial, Mr. Willis resigned from the Indiana Bar
 
 
 [3]
 Mr. Willis appealed the court's denial of relief on issues that are not now before us. For clarity, we shall not discuss those issues here
 
 
 [4]
 As we have already noted in the text, in Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), the Supreme Court recognized a limited exception to this doctrine and held that even an independent and adequate state procedural ground may be reviewed by the federal courts if the petitioner can show "cause and prejudice" for the procedural default. Id. at 90-91, 97 S.Ct. at 2508-09. However, Mr. Willis has chosen not to present a cause and prejudice argument on appeal. Accordingly, he has waived the issue and we shall not discuss it further
 
 
 [5]
 The admonition of Coleman is perhaps best understood in the factual background of the case. In Coleman, a defendant who had been convicted in a Virginia state court filed his notice of appeal one day late. On appeal, the defendant attempted to raise several federal constitutional claims that he had not presented to the trial court. The state appellate court did not reach the merits of his appeal. Instead, it determined that Coleman had procedurally defaulted his claims by failing to comply with the Virginia procedural rule that requires notice of appeal to be filed within thirty days of the entry of judgment. Subsequently, Coleman petitioned the Virginia state courts for habeas corpus relief; he again attempted to raise his federal constitutional claims. However, Coleman exhausted all of his state avenues for postconviction relief and no state court reached the merits of his constitutional claims because of his procedural default. No other argument of a colorable federal constitutional nature was ever presented. The Supreme Court of Virginia was probably unaware of Coleman's substantive contentions when it ruled on the state procedural default. See O'Dell v. Thompson, --- U.S. ----, ----, 112 S.Ct. 618, 619, 116 L.Ed.2d 639 (1991) (statement of Blackmun, J., respecting the denial of certiorari). Coleman then filed a federal habeas petition, again raising all of his constitutional claims. It was in this context that the Supreme Court declined to apply the presumption of Harris. There simply was no basis upon which to argue that the Virginia Supreme Court's procedural rule was based on federal grounds and therefore there was an adequate and independent state law ground
 
 
 [6]
 As Chief Judge Baker wrote in United States ex rel. Gibson v. McGinnis, 773 F.Supp. 126, 131 (C.D.Ill.1991):
 Before resolving any ambiguity in favor of federal review, the federal habeas court must first closely examine the state court opinion and the state's procedural rules in order to determine whether the state court which issued the ambiguous opinion intended to reach the merits of the federal claim.
 
 
 [7]
 In other words, "a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government." Teague, 489 U.S. at 301, 109 S.Ct. at 10