UNITED STATES of America ex rel.
Donald WINSTON, Petitioner,

v.

Thomas PAGE, Respondent.

No. 96 C 1273.

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 14, 1997.

Donald Winston, Mt. Sterling, pro se.

Arleen C. Anderson, Darryl Belmonte Simko, Margaret Mary O'Connell, Attorney General's Office, Chicago, IL, for Respondent.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Petitioner, Donald Winston, was convicted of murder and robbery in March 1980 in the Circuit Court of DuPage County, Illinois. Mr. Winston has appealed his convictions in the Illinois state court system through both the direct appellate review mechanism and the Illinois post-conviction relief statute. All of his appeals have been unsuccessful in overturning his convictions. Accordingly, Mr. Winston petitions this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the petition is denied.

Mr. Winston claims that the following four grounds justify action by this Court to grant him relief: (1) violation of his *Miranda* rights during custodial interrogation; (2) prosecutorial misconduct by exceeding the scope of direct examination when cross examining Mr. Winston and implicitly commenting on his failure to testify; (3) use of perjured testimony by the State to secure the conviction; and (4) a prison sentence which amounts to the imposition of cruel and unusual punishment.[1] None of these grounds, however, permit the Court to grant Mr. Winston's petition.

### Violation of Miranda Rights

Mr. Winston alleges that the State violated his *Miranda* rights when it interrogated him without providing him with an attorney. He maintains that he requested the police investigators and the state's attorneys who interviewed him to appoint an attorney for him prior to his interrogation, but these officials took no action. As a result, the confession that resulted from the State's interrogation of Mr. Winston was obtained illegally. The State disputes Mr. Winston's claims. It argues that Mr. Winston was told of his *Miranda* rights, understood those rights, and voluntarily waived his right to counsel when making his confession. The Illinois Appellate Court agreed with the State's version and upheld the trial court's determination that Mr. Winston's testimony was not credible. *People v. Winston*, 106 Ill.App.3d 673, 682–85, 62 Ill.Dec. 355, 362–64, 435 N.E.2d 1327, 1334–36 (2nd Dist.1982).

The Seventh Circuit has provided a framework for analyzing these types of habeas claims. "When a *Miranda* waiver is challenged, two distinct questions are presented: whether the waiver was voluntary, knowing, and intelligent as a matter of fact, and whether it was involuntary as a matter of law." *Henderson v. DeTella*, 97 F.3d 942, 946 (7th Cir.1996). The first question, concerning the knowledge, understanding and willingness of the petitioner to waive his rights, often involves conflicting testimony from both the State and the petitioner and "thus demands credibility assessments that typically only the trier of fact can make." *Id.* (citations omitted). These credibility assessments and other factual determinations made by the state court as the trier of fact are "entitled to a presumption of correctness" under 28 U.S.C. § 2254(e)(1). *Id.* (citations omitted).[2]

---

1. Mr. Winston's petition originally offered a fifth ground for relief, improper juror selection. In his reply brief, however, Mr. Winston conceded this argument. Therefore, I will not address it.

2. On April 24, 1996 the President signed the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (1996) (amending 28 U.S.C. § 2254(d)–(e)). The Seventh Circuit recently decided that the substantive provisions of Section 2254(d) of that law apply to those habeas cases which were pending at the time of its enactment. *Lindh v. Murphy*, 96 F.3d 856, 867 (7th Cir.1996)(en banc), *cert. granted in part,* —— U.S. ——, 117 S.Ct. 726, 136 L.Ed.2d 643 (1997).

For the purposes of this case, however, Section 2254(e)(1) of the new law is relevant. That section provides that "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence...." Although the Seventh Circuit did not address the retroactive application of this section specifically, the Court believes that the same reasoning employed by the Seventh Circuit in *Lindh* makes Section 2254(e)(1) apply retroactively as well. *See Lindh*, 96 F.3d at 865–67; *Thomas v. Gramley*, 951 F.Supp. 1338, 1340–41 (N.D.Ill.1996). Accordingly, the Court will apply Section 2254(e)(1) to Mr. Winston's claims.

■ In the instant case, the trial court made several factual determinations concerning Mr. Winston's knowledge, understanding and relinquishment of his right to an attorney prior to speaking with police investigators and state's attorneys. Specifically, the court found that Mr. Winston did not request an attorney. *Winston,* 106 Ill.App.3d at 683, 62 Ill.Dec. at 362, 435 N.E.2d at 1334. The court credited the testimony of the police officer who questioned Mr. Winston and informed him of his rights. *Id.* These kinds of credibility assessments are due a great amount of deference by this Court because of the trial court's unique ability to observe the witnesses and hear the testimony first-hand. *Sprosty v. Buchler,* 79 F.3d 635, 645 (7th Cir.1996).

■ Furthermore, the trial court identified several statements made by Mr. Winston which indicated that he understood his right to have an attorney prior to police questioning. Mr. Winston knew that if he talked with the police, they might use his statements against him, but if he made those same statements to his lawyer, his lawyer would not use them against him. Tr. of 1/21/80 at 8. In addition, the trial court found that Mr. Winston relinquished his right to an attorney because after being told by the state's attorney that he would " 'adhere to' " his right to have an attorney present, Mr. Winston asked, " 'what do you want to know?' " *Winston,* 106 Ill.App.3d at 684, 62 Ill.Dec. at 363, 435 N.E.2d at 1335.

I have no basis upon which to dispute the trial court's factual findings. Mr. Winston contends that the testimony offered by the police and the state's attorneys was replete with inconsistencies which negate the weight accorded to it by the trial court. Putting aside the deference owed to the trial court's factual findings, I don't find clear and convincing evidence in the record to support Mr. Winston's contentions. Despite Mr. Winston's failure to point the Court to specific parts of the record which would support his position, the Court's own independent search of the record does not reveal any reason to disturb the trial court's findings. In fact, the record reveals that all of the state officials involved with interviewing Mr. Winston in-

formed him of his rights and specifically told him that he did not have to speak with them. Tr. of 12/14/79 at 26, 36–37, 50, 74–75, 96, 1002–03. Moreover, each person testified that Mr. Winston understood his rights and agreed to answer their questions. *Id.* Given these facts and the deference owed to the trial court's credibility assessments, I must accept the trial court's finding that Mr. Winston both comprehended and relinquished his *Miranda* rights. *See Henderson,* 97 F.3d at 949. Mr. Winston's real contention focuses on the state courts' interpretation and application of the legal standards governing *Miranda* rights. For that issue, the Court turns to the next step of the inquiry.

■ The second question, regarding the involuntariness of the confession, is a legal question which the Court reviews de novo. *Id.* at 947. This question involves an examination of the overall circumstances surrounding the confession to ensure that it was the "product of fundamentally fair procedures, untainted by any type of coercion...." *Id.* (citations omitted). Despite the legal nature of the inquiry, its resolution often will turn on "subsidiary" factual issues which are entitled to a presumption of correctness. *See Bryan v. Warden, Ind. State Reformatory,* 820 F.2d 217, 219 (7th Cir.1987).

■ The case presently before the Court is one of these cases in which the factual determinations of the state court affect the de novo review of the legal issues. As already explained above, the Court will defer to the trial court's factual determinations that Mr. Winston understood his *Miranda* rights and chose to forego those rights with respect to the presence of counsel prior to police questioning. Hence, the remaining issue is whether Mr. Winston voluntarily made this choice. He argues that the police and state's attorneys caused him to be very nervous and anxious throughout their questioning and cajoled him into making a confession. Although the record shows that Mr. Winston seemed agitated during questioning and asked to see a psychiatrist, these facts do not demonstrate that the police interrogation amounted to coercion. In fact, Mr. Winston's anxious state just as easily might be attributed to the fact that the police were

questioning him about a murder he committed. What the record does demonstrate is that the police and state's attorneys tried to accommodate Mr. Winston by offering him soft drinks and cigarettes. Tr. of 12/14/79 at 104–05. Such offers do not constitute coercion or cajolement on the part of state authorities. *Cf. Clewis v. State of Texas,* 386 U.S. 707, 712, 87 S.Ct. 1338, 1341, 18 L.Ed.2d 423 (1967) (holding that deprivation of food and sleep may be a factor in proving coercion).

Indeed, Mr. Winston's conduct during the interrogation proves just the opposite of coercion. When Mr. Winston was asked two questions relating to his sexual relationship with the victim, he declined to answer them. Tr. of 12/14/79 at 101; *see also Winston,* 106 Ill.App.3d at 685, 62 Ill.Dec. at 364, 435 N.E.2d at 1336. By refusing to answer some of the police's questions, he demonstrated the voluntary, non-coerced nature of his statements.

Finally, Mr. Winston claims that the state courts only discussed his comprehension of his *Miranda* rights; they never showed that he relinquished them. I disagree. The Supreme Court has held that a valid *Miranda* waiver encompasses both comprehension and relinquishment of rights. *Brewer v. Williams,* 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977). The appellate court recognized this legal standard in its opinion, *Winston,* 106 Ill.App.3d at 685, 62 Ill.Dec. at 364, 435 N.E.2d at 1336, and both the trial and appellate courts showed facts proving both comprehension and relinquishment on the part of Mr. Winston. As detailed above, Mr. Winston has not come forward with clear and convincing evidence tending to prove otherwise. Therefore, Mr. Winston's first ground for habeas relief is without merit.

### Prosecutorial Misconduct—
### Cross Examination

Mr. Winston's second basis for habeas relief centers on the actions of the prosecutor in cross-examining him. Mr. Winston claims that the prosecutor, in his cross-examination, exceeded the scope of direct examination and prejudiced Mr. Winston by commenting on his failure to testify about the specific events of the case. The State argues that Mr. Winston is procedurally barred from raising this claim in this Court. I agree.

In habeas proceedings, a federal court will not review a decision of a state court involving a federal question where that decision "rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson,* 501 U.S. 722, 729, 111 S.Ct. 2546, 2553, 115 L.Ed.2d 640 (1991) (citations omitted). If the state court, however, has failed to make a plain statement that its decision rests on an independent and adequate state law ground, then a presumption arises that the court reached the federal question. *Michigan v. Long,* 463 U.S. 1032, 1042, 103 S.Ct. 3469, 3477, 77 L.Ed.2d 1201 (1983). Even if a state court fails to make this plain statement, "the presumption may not apply automatically: The federal court first must determine whether the state court decision fairly appears to rest on federal grounds." *Willis v. Aiken,* 8 F.3d 556, 561 (7th Cir. 1993).

The instant case presents this Court with the situation described in *Willis.* Mr. Winston failed to preserve the issue of prosecutorial misconduct because he did not raise it in a post-trial motion. Consequently, the appellate court found that he had waived it for appellate review. *Winston,* 106 Ill. App.3d at 686, 62 Ill.Dec. at 365, 435 N.E.2d at 1337. Yet the court also discussed the plain error doctrine as an exception to the waiver rule. *Id.* Pursuant to Illinois Supreme Court Rule 615(a), a petitioner may avoid the bar of waiver if the evidence is closely balanced or the error in question was so great that it denied the petitioner a fair trial. *Id.* The appellate court found that Mr. Winston's claims did not rise to the level of plain error, but it did not state that this finding was in the alternative to its waiver analysis. *Id.* Hence, the appellate court failed to make a plain statement of its grounds for rejecting Mr. Winston's claims.

As *Willis* teaches, I must look to see if the appellate court's decision rests on any federal law grounds. It does not. The appellate

court did not cite any federal cases or even mention any federal or constitutional rights. *Id.* In its plain error discussion, the court cited several cases, but these cases themselves make no reference to any federal law. *Id.* The appellate court framed its discussion in terms of state evidentiary rules and found no prejudice to Mr. Winston from any improper questions due to the prompt sustaining of objections by the trial court and a general jury instruction to disregard those questions. *Id.* Therefore, the appellate court decision rests on independent and adequate state grounds and may not be reviewed by this Court. *See United States ex rel. Hartfield v. Gramley,* 853 F.Supp. 289, 293 (N.D.Ill.1994); *see also United States ex rel. Balderas v. Godinez,* 890 F.Supp. 732, 745–46 (N.D.Ill.1995).

### *Perjured Testimony*

■ Mr. Winston's third claim, that his conviction was secured using perjured testimony from State witness Peter Makres, faces a different procedural bar. Before any federal court may hear claims in a petition for habeas corpus relief, a state court must have had a *"full and fair"* opportunity to review all of a petitioner's federal claims. *Farrell v. Lane,* 939 F.2d 409, 410 (7th Cir.1991) (emphasis added). A failure to provide this opportunity results in a procedural default which bars the petitioner from raising those claims in federal court. *Id.* at 410. If the petitioner, however, can show "adequate *cause* to excuse his failure to raise the claim in state court and actual *prejudice* resulting from the default," he may be permitted to raise the defaulted claim in federal court. *Id.* at 411. A petitioner also may overcome a procedural default by demonstrating that a fundamental miscarriage of justice will occur without federal court review. *Coleman,* 501 U.S. at 750, 111 S.Ct. at 2564–65.

■ Mr. Winston failed to give the state courts a full and fair opportunity to review *directly* his claim of perjured testimony. He did raise this issue in both his first and second petitions for post-conviction relief, but in each instance, he failed to include the relevant part of the transcripts which would permit the state courts to address his claim

fully and fairly. In his third petition, Mr. Winston raised the perjury issue, but he did so indirectly in the context of an ineffective assistance of counsel claim. He claimed that the reason his first two petitions failed on the perjury issue was due to his counsel's failure to provide the courts with the necessary transcripts and other supporting documents. Consequently, the appellate court found that his claim was not barred under *res judicata* principles because it was presented as an ineffective assistance of counsel claim rather than directly as a perjury claim. *People v. Winston,* No. 79–CF–1651, slip op. at 5 (Ill. App. 2nd Dist. Aug. 30, 1995).

In his habeas petition, however, Mr. Winston once again presents this perjured testimony claim. Because this claim never has been addressed fully and fairly by the state courts directly as a claim of perjury, I am precluded from reviewing it. *See United States ex rel. Alcantar v. Gramley,* 870 F.Supp. 246, 247 n. 2 (N.D.Ill.1994); *United States ex rel. Love v. Flannagan,* No. 86 C 7931, 1987 WL 12924, at *1 (N.D.Ill. June 22, 1987). Nonetheless, if Mr. Winston can demonstrate cause for this procedural default and resulting prejudice, I can review the claim.

■ The appellate court did not reach the issue of whether or not the performance of Mr. Winston's counsel was deficient enough to constitute a violation of his constitutional rights. *Winston,* No. 79–CF–1651, slip op. at 7. Likewise, the Court need not reach the issue of whether Mr. Winston's ineffective counsel can qualify as cause to excuse a procedural default because Mr. Winston cannot demonstrate any prejudice. The Court simply notes that "[a]ttorney error short of [constitutionally] ineffective assistance of counsel ... does not constitute cause and will not excuse a procedural default." *McCleskey v. Zant,* 499 U.S. 467, 494, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991). On the prejudice issue, Mr. Winston has not demonstrated that the State used perjured testimony to secure his conviction. He points this Court to a transcript from July 29, 1980 in which the State argued that Mr. Makres, the alleged perjurious witness, should receive credit toward one of his prison sentences for time served. On this basis,

Mr. Winston maintains that the State made a secret deal with Mr. Makres in return for his testimony. Neither the July 29, 1980 transcript nor anything else in the record supports Mr. Winston's allegations. In the transcript the prosecutor states that Mr. Makres voluntarily came forward and offered to testify and was not promised anything in return for that testimony. Tr. of 7/29/80 at 3, 5. The prosecutor only supported Mr. Makres' request afterwards because he had done the "right thing" by testifying. *Id.* at 5. Mr. Winston has offered no reason, and I cannot find any in the record, to doubt the veracity of the prosecutor's statement. Thus, Mr. Winston cannot show the necessary prejudice to his rights to hurdle the procedural bar on this claim.

### Cruel and Unusual Punishment

■ Mr. Winston's final ground for habeas relief is that the imposition of a sixty year prison sentence for his murder conviction amounts to cruel and unusual punishment. Federal courts generally do not review state prison sentences that lie within statutory limits. *Williams v. Duckworth,* 738 F.2d 828, 831 (7th Cir.1984). The only method for attacking a state sentence in a habeas corpus petition is by demonstrating that the trial court "lacked jurisdiction to impose it or committed a constitutional error that made the sentence or underlying conviction fundamentally unfair." *United States ex rel. Melind v. Illinois,* No. 93 C 734, 1994 WL 710663, at *5 (N.D.Ill.Dec.20, 1994) (citing *Bean v. United States,* 679 F.2d 683, 685 (7th Cir.1982)).

■ Based on this well-established law, Mr. Winston's cruel and unusual punishment claim is not cognizable in this court. The trial court was well within its statutory authority to impose this sentence based on its findings regarding the brutality and heinousness of Mr. Winston's crime. Ill.Rev.Stat. 1979, ch. 38, ¶¶ 1005–5–3.2(b)(2), –8–2(a)(1). To the extent that Mr. Winston challenges the trial court's findings on the brutality of the crime, that determination was based on state law and did not involve any federal constitutional issues. *Winston,* 106 Ill. App.3d at 687, 62 Ill.Dec. at 366, 435 N.E.2d

at 1338. Therefore, the claim is not cognizable in this Court.

### Conclusion

Mr. Winston's grounds for habeas relief either are procedurally defaulted, not cognizable in this Court, or lacking merit. Therefore, his petition for habeas corpus is denied.