UNITED STATES of America ex rel.,
Jameel DRAIN, Petitioner,

v.

Odie WASHINGTON, Respondent.

No. 97 C 748.

United States District Court,
N.D. Illinois,
Eastern Division.

May 28, 1999.

Jameel Drain, Dixon, IL, pro se.

Chief of Criminal Appeals, Illinois Attorney General's Office, Chicago, IL, for respondent.

### MEMORANDUM AND ORDER

MANNING, District Judge.

Petitioner Jameel Drain seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He also seeks leave to file a reply in support of his petition. For the following reasons, Drain's motion for leave to file a reply is granted and his request for relief under § 2254 is denied.

## I. Background

### A. Jurisdiction

The Antiterrorism and Effective. Death Penalty Act of 1996, Pub.L. 104–132, 100 Stat. 1214 (the "AEDPA"), which amended the statutory provisions governing federal writs of habeas corpus, became effective on April 24, 1996. Because Drain filed his petition after April 24, 1996, the AEDPA governs his petition. *See Long v. Krenke,* 138 F.3d 1160, 1163 (7th Cir.1998). Pursuant to the AEDPA, jurisdiction over Drain's § 2254 petition is proper only if it is not a "second or successive petition," 28 U.S.C. § 2244(b), and is timely under the AEDPA's one year filing rule, 28 U.S.C. § 2254(d)(1). Since this is Drain's first § 2254 petition, the AEDPA's proscriptions against second or successive petitions do not affect him.

With respect to the timeliness of Drain's petition, the court originally held that Drain had failed to submit a good-faith motion for leave to proceed in forma pauperis ("IFP") with his petition for a writ of habeas corpus under 28 U.S.C. § 2254 and had ultimately paid the filing fee after the statute of limitations in 28 U.S.C. § 2244(d)(1) had expired. *Drain v. Washington,* No. 97 C 748 (N.D.Ill. May 11, 1998) (unpublished order). Drain's petition thus posed this question: Is a § 2254 petition "filed" for purposes of the AEDPA

when the petition is received along with a bad faith IFP motion?

The court held that the answer to this question was "no," reasoning that an application to proceed IFP must be presented in good faith in order to satisfy Rule 3 of the Rules Governing Section 2254 Cases in the United States District Courts, and that a petition accompanied by a bad faith IFP motion was not properly "filed."[1] U.S. ex rel. *Barnes v. Gilmore*, 987 F.Supp. 677, 682 (N.D.Ill.1997), *citing Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), and Rule 3 of the Rules Governing Section 2254 Cases in the United States District Courts; *Barke v. Berge*, 977 F.Supp. 938, 939 (E.D.Wis.1997) (for the purposes of the one-year limitations period in the AEDPA, a habeas petition is deemed filed upon receipt of the petition and the fee or an order granting leave to proceed in forma pauperis). Drain appealed and the court granted a certificate of appealability as the Seventh Circuit had not considered the fee issue raised by Drain's petition and courts in the Northern District of Illinois were split on the fee issue.

The court later revisited this issue sua sponte as it considered a number of subsequent cases addressing this question. *See, e.g., U.S. ex rel. Washington v. Gramley*, No. 97 C 3270, 1998 WL 171827 (N.D.Ill. Apr. 10, 1998). It then requested a remand under Circuit Rule 57, which the Seventh Circuit granted. The court's Rule 57 certification ultimately correctly anticipated the trend with respect to the relationship between resolution of a petitioner's fee status and the timeliness of his habeas petition, as the Seventh Circuit recently held that, for statute of limitations purposes, a habeas petition is timely for statute of limitations purposes even if it is not accompanied by the $5 filing fee or an IFP motion. *Jones v. Bertrand*, 171 F.3d 499, 503 (7th Cir.1999).

In *Jones*, the pro se petitioner did not submit the $5 fee or an IFP motion, and there was no evidence that he had done so in bad faith. *Id.* at 503–04. The Seventh Circuit found that he had substantially complied with the filing requirements and that his petition thus was "filed" under the prisoner mailbox rule when he handed it to the prison officials. *Id.* This case is distinguishable because the court has found that Drain acted in bad faith when he sought leave to proceed IFP. Thus, the court must determine whether Drain is entitled to take advantage of the filing rule in *Jones* despite his bad faith IFP motion.

It is true that the Seventh Circuit repeatedly qualified its holding in Jones regarding the submission of IFP motions by noting that the petitioner had not acted in bad faith. *Id.* at 502–04. Nevertheless, the Seventh Circuit clearly chose the *Houston* mailbox rule over a strict reading of Rule 3, and held that Rule 3 is procedural and not substantive. *Id.* at 502–03. In addition, although the Seventh Circuit did not expressly address the effect of submitting a bad faith IFP motion, it stated that failing to determine whether a petitioner is liable for the filing fee when he submits his petition does not have any "negative impact" and held that "a district court should regard as 'filed' a complaint which arrives in the custody of the clerk within the statutory period but fails to comply with formal requirements in local rules." *Id., citing Gilardi v. Schroeder*, 833 F.2d 1226, 1233 (7th Cir.1987).

Here, Drain submitted his § 2254 petition within the statutory one-year period (albeit with a bad faith IFP motion). After a close study of *Jones*, the court finds that Drain's petition is timely despite his bad faith IFP motion as there is no principled way to reconcile the Seventh Circuit's pronouncements regarding *Houston* and Rule 3 with a rule that hand-

---

1. Rule 3(b) provides, in pertinent part, that: "[u]pon receipt of the petition and the filing fee, or an order granting leave to the petitioner to proceed in forma pauperis, and having ascertained that the petition on its face appears to comply with rules 2 and 3, the clerk of the district court shall file the petition and enter it on the docket in his office."

ing a § 2254 petition and a bad faith IFP motion to a prison official means that the petition is not deemed "filed." Moreover, under the *Houston* mailbox rule, as discussed in *Jones*, a petition is "filed" when the prisoner gives his § 2254 petition to a prison official, with or without an IFP motion. At the time this occurs, if a prisoner submits an IFP motion, there is no way to definitively know whether a court will later find that the IFP motion was filed in bad faith.

This leaves two options. First, a bad faith IFP motion could retroactively "unfile" a habeas petition upon a finding that the motion was filed in bad faith. In this scenario, the statute of limitations would continue to run until the petitioner paid the filing fee. Alternatively, an IFP motion—regardless of whether it was filed in good faith or not—could toll the statute of limitations. Upon a finding that the motion was filed in bad faith, however, the statute would then begin to run until the petitioner paid the fee. The court declines to adopt option one, as it believes that pro se litigants should not be forced to, in effect, play a filing fee version of Russian Roulette where they only know if their IFP motion tolls the limitations period after it is too late to do anything about it.

■ Option two, on the other hand, is consistent with the reasoning in *Jones* and makes the computation of the limitations period predictable at all stages of the litigation. The court thus adopts option two. This means that the time when Drain's IFP motion was pending tolled the statute of limitations. In turn, this means that Drain's petition is timely and that the court has jurisdiction to consider it.

## B. Facts

Under 28 U.S.C. § 2254(e)(1), in the absence of a showing by the petitioner of clear and convincing evidence to the contrary, a determination of a factual issue by a state court is presumed to be correct for the purposes of habeas review. *See, e.g., Abrams v. Barnett*, 121 F.3d 1036, 1038 (7th Cir.1997). Drain does not challenge the facts as set forth in the opinion of the Illinois Appellate Court affirming his conviction and sentence. Accordingly, the following facts are adopted from the Illinois Appellate Court's decision in *People v. Drain*, 276 Ill.App.3d 1120, 231 Ill.Dec. 734, 697 N.E.2d 15 (1995) (unpublished order). Due to the brevity of the Illinois Appellate Court's recitation of facts, however, the court has also included facts from Drain's state court appellate brief in order to provide additional context.

Quovadis Gates was fatally wounded by gunfire on October 7, 1990. On that evening, Gates was sitting in a parked car on the corner of 57th and Normal with his girlfriend, Lisa Dixon. Petitioner Jameel Drain, Robert Berry, and Charles Jones were also near 57th and Normal at this time as they had planned to rob Gates. Berry was to sell a gold chain to Gates and, as Berry walked away, Drain (who had a handgun) and Jones were to approach Gates' car and rob him. It is true, however, that "[t]he best laid schemes o' mice and men; Gang aft a-gley; And leave us naught but grief and pain ..." Robert Burns, To a Mouse (1785). In other words, things did not go as planned.

Berry approached Gates and asked him if he wanted to buy the chain, but Gates refused. As Berry walked away, Drain and Jones approached Gates' car. Moments later, Berry heard a gunshot and Drain and Jones came running around the corner. At trial, Berry testified that Drain had a gun in his hand and that Drain told him that he shot Gates because Gates was reaching under the dashboard.

In addition, Carla Smith testified that she lived with Drain and her boyfriend, Derrick Emmons. According to Smith, Drain returned home in the early morning hours of October 7, 1990, and told Emmons that he had shot Gates. On January 26, 1991, Emmons was killed. At this time, Smith gave the police a written statement concerning Drain's confession. Smith testified that, after she made this statement, Drain asked her not to testify

against him and offered her money to "play dumb."

Lisa Dixon, Gates' girlfriend, testified that, on the night of Gates' murder, a man approached Gates' car and asked him if he wanted to buy a gold chain. Dixon stated that another man subsequently approached the driver's side of the car and held a gun to Gates' head. As this occurred, another man opened the passenger side of the car and Dixon placed her hands over her eyes. She then heard a gunshot and Gates fell into her lap. Dixon testified that she never positively identified who shot Gates and that she thought that the police had directed her to look at a specific individual while she was viewing a lineup which included Drain.

Lamont Norwood testified that he was on the corner of 57th and Stewart on the night that Gates was murdered. Norwood saw a man give a gun to either Drain or Jones. Drain and Jones then walked away. Minutes thereafter, Norwood heard a gunshot. When Norwood arrived at 57th and Normal, he saw Gates in an ambulance. In 1993, Norwood spoke to Steve Kirby, a private investigator. Norwood told Kirby that he could not remember anything about the shooting. At trial, Norwood testified that he said this to protect his family.

Detectives Michael Duffin and Tom Ptak investigated the shooting. Detective Duffin testified that he spoke with Cara Smith about Emmons and Gates' deaths and that this caused him to search for Charles Jones, Robert Berry, and Jameel Drain. Police arrested Jones and Berry relatively quickly, but searched for Drain between 30 and 40 times before his arrest on June 19, 1991. On cross-examination, defense counsel attempted to ask Detective Duffin if his report stated that Berry told him that he was with Drain on the night of the shooting. Defense counsel said he wanted to introduce the contents of the report to show that Detective Duffin had generated a false police report. The trial court judge, however, sustained the State's objection and held that defense counsel could only impeach Detective Duffin by asking him if Berry had told him that he was with Drain. Detective Duffin then testified that Berry had told him that he was with Drain on October 7, 1990, and that Drain had a gun and shot Gates. He also testified that Lisa Dixon viewed a lineup and identified Drain.

**C. Procedural Posture**

A jury in the Circuit Court of Cook County, Illinois, found Drain guilty of first degree murder and attempted armed robbery. The circuit court sentenced Drain to 47 years imprisonment for the murder and 15 years imprisonment for the attempted armed robbery, to be served concurrently.

In his direct appeal, Drain contended that:

(1) The trial court deprived him of his constitutional right to present a defense when it denied his motion to subpoena Detectives Duffin and Tom Ptak's employment records without first conducting an *in camera* inspection of those records to determine whether they were relevant;

(2) The trial court deprived him of his constitutional right to present a defense and his right to confront and cross-examine witnesses when it precluded defense counsel from questioning Detective Duffin about whether he generated false police reports;

(3) His multiple convictions for first degree murder and attempted armed robbery were improper since both offenses arose from a single act; and

(4) His sentence of 47 years imprisonment was excessive in light of evidence that showed that the shooting was not premeditated, that he had only one prior conviction for a nonviolent offense, and that he had significant rehabilitative potential.

On December 29, 1995, the Illinois Appellate Court rejected these claims and

affirmed Drain's conviction. *People v. Drain*, 276 Ill.App.3d 1120, 231 Ill.Dec. 734, 697 N.E.2d 15 (1995) (unpublished order). Drain filed a petition for leave to appeal ("PLA") with the Illinois Supreme Court raising issues one, two, and four, which was denied. *People v. Drain*, No. 80559 (Ill. Apr. 2, 1996). Drain did not seek state post-conviction relief.

Drain's § 2254 petition raises the same four issues presented to the Illinois Appellate Court on direct appeal. Drain also filed a "Memorandum in Support of Amended Arguments for Habeas Corpus Petition Relief" with this court raising five additional arguments:

(1) The trial court erred when it refused to permit the defense to cross-examine Detective Duffin and thereby allowed the prosecutor to make a closing argument that contradicted the defense's offer of proof;

(2) The trial court's rulings regarding the voir dire, jury instructions, and jury seating were erroneous;

(3) The trial court erred by allowing the prosecutor to remark on Drain's failure to testify, to make misstatements of the law and to make prejudicial statements unsupported by the evidence;

(4) The trial court erred when it refused to admit Drain's proffered photographic exhibits and admitted the state's photographic exhibits into evidence; and

(5) The trial court erred when it denied Drain's motion for a directed verdict.

## II. Discussion

### A. Are Drain's Claims Cognizable, Exhausted, and Not Procedurally Defaulted?

 This court may only address the merits of Drain's petition if his claims are cognizable on federal habeas review, *Biskup v. McCaughtry*, 20 F.3d 245, 247 (7th Cir.1994), and Drain exhausted his state remedies and avoided procedural default under Illinois law, *Bocian v. Godinez*, 101 F.3d 465, 468 (7th Cir.1996). For the fol-

lowing reasons, issues three and four in his § 2254 petition are not cognizable, all of Drain's claims are exhausted, and all of the issues in Drain's "Memorandum in Support of Amended Arguments for Habeas Corpus Petition Relief" are procedurally defaulted.

#### 1. Non–Cognizable Claims

 The court, "under § 2254, must focus on alleged violations of the federal constitution, laws and treaties," as " § 2254 cannot be invoked simply to require state officials to comply with state law or to review alleged violations of state law." *Biskup v. McCaughtry*, 20 F.3d at 247. As noted above, Drain claims that his multiple convictions for first degree murder and attempted armed robbery were improper since both offenses arose from a single act (claim three) and that his sentence was excessive (claim four). These claims are not properly before the court as neither of these claims asserts a federal constitutional violation.

Specifically, Drain fails to assert that either of these claims are based on violations of federal law. Moreover, he does not rely on federal law in his § 2254 petition and did not rely on federal law in his state court proceedings. With respect to Drain's contention that his sentence was excessive in light of various mitigating factors, the court notes that Drain does not claim that his sentence exceeded the sentencing range of a valid state statute. Accordingly, the severity of his sentence cannot form the basis of federal habeas relief. *See United States ex rel. Sluder v. Brantley*, 454 F.2d 1266 (7th Cir.1972); *see also Estelle v. McGuire*, 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (noting that state law violations provide no basis for federal habeas relief). Moreover, Drain does not contend that the trial court lacked jurisdiction to impose a sentence upon him or that the trial court committed a constitutional error, which made his sentence fundamentally unfair. *See Gleason v. Welborn*, 42 F.3d 1107, 1112 (7th Cir.1994).

Thus, claims three and four are beyond the province of federal habeas review.

## 2. Exhaustion

██ A petitioner has failed to exhaust if he seeks to raise issues that have not been considered by the state court but still may be presented. *Resnover v. Pearson*, 965 F.2d 1453, 1458 (7th Cir.1992). Claims are exhausted when they are presented to the highest court for a ruling on the merits or when no means of pursuing review remain available. 28 U.S.C. § 2254(c); *see also Farrell v. Lane*, 939 F.2d at 410. Drain clearly exhausted the claims in his § 2254 petition as he presented them to the Illinois Appellate Court and filed a PLA. Moreover, exhaustion principles do not require Drain to seek post-conviction relief based on the same evidence and issues after the state has considered his claim on direct review. *Boerckel v. O'Sullivan*, 135 F.3d 1194, 1197 (7th Cir.1998), *cert. granted in part by* —— U.S. ——, 119 S.Ct. 508, 142 L.Ed.2d 421 (1998). Drain's claims in his "Memorandum in Support of Amended Arguments for Habeas Corpus Petition Relief"are also exhausted, as there are no available avenues for further state court review at this time.

## 3. Procedural Default

██ Procedural default occurs when a petitioner fails to assert a claim that could have been brought in state court and the time for doing so has passed. *Resnover v. Pearson*, 965 F.2d at 1458. This happens if the petitioner fails to pursue appeals required by state law, *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), or fails to present his federal claims to the state court, *Resnover v. Pearson*, 965 F.2d at 1458–59. Procedural default also occurs when the state court does not address the petitioner's federal claims because he failed to meet an independent and adequate state procedural requirement in presenting a claim. *Coleman v. Thompson*, 501 U.S. at 729, 111 S.Ct. 2546; *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Federal courts may only consider claims that have not been properly presented to the state court if the petitioner demonstrates cause and prejudice stemming from the procedural default, or establishes that the federal court's failure to reach the merits will result in a fundamental miscarriage of justice. *See. e.g., Gray v. Netherland*, 518 U.S. 152, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996). With these principles in mind, the court turns to Drain's claims.

### a. Independent and Adequate State Ground

The respondent asserts that Drain's first claim—that the trial court denied him a fair trial when it denied the admission of certain disciplinary records without first conducting an *in camera* inspection of those records—is procedurally barred by an independent and adequate state ground. Specifically, the respondent points out that the Illinois Appellate Court held that Drain had waived this claim because he failed to ask the trial court to conduct an in camera inspection of those records. This is not, however, the end of the story, as the state court reached the merits of Drain's claim in the alternative.

As the Seventh Circuit has explained, "[f]or a state procedural ground to bar review, the state court actually must have relied upon the procedural bar as an independent basis for its disposition of the case." *Willis v. Aiken*, 8 F.3d 556, 561 (7th Cir.1993). Thus, the court must determine whether the last state court to which the petitioner presented his federal claims "clearly and expressly rel[ied] on an independent and adequate state ground." *Id.* If so, then the state court's decision is beyond the scope of federal habeas review. *Id.* In contrast, if the state court decision "fairly appeared to rest primarily on the resolution of the petitioner's federal claims, or to be interwoven with those claims . . . . a federal court may address the petition." *Id., citing Coleman v. Thompson*, 501 U.S. at 735, 111 S.Ct. 2546.

■ Here, the Illinois Appellate Court held that Drain had waived his in camera inspection claim but then decided the merits of this claim, stating that, "[a]ssuming arguendo, that the issue is not waived, we nevertheless, find no abuse of discretion." *See People v. Drain,* No. 91–15436, (1st Dist Dec. 29, 1995). Because the Illinois Appellate Court considered the merits of Drain's claim in the alternative, it did not actually rely upon the state procedural bar as an independent basis for its disposition of the claim. Accordingly, Drain has not procedurally defaulted his in camera inspection claim.

### b. Claims Raised in Drain's Supplement to His § 2254 Petition

■ The respondent also argues that the five claims raised in Drain's supplemental "Memorandum in Support of Amended Arguments for Habeas Corpus Petition Relief" are procedurally defaulted because Drain never presented these claims in his state court proceedings. It is well established that in any habeas corpus proceeding, "state courts must have a fair opportunity to consider the petitioner's constitutional claims before the federal courts may address those claims." *Kurzawa v. Jordan,* 146 F.3d 435, 441 (7th Cir. 1998). Because the claims in Drain's "Memorandum in Support of Amended Arguments for Habeas Corpus Petition Relief" made their first appearance in that document, they are procedurally defaulted.

### 3. Cause and Prejudice and Fundamental Miscarriage of Justice

The court may nevertheless reach the merits of Drain's procedurally defaulted arguments if he establishes either: (1) good cause for his failure to follow a rule of state procedure and actual prejudice resulting therefrom; or (2) that the default will result in a fundamental miscarriage of justice. *See, e.g., Coleman v. Thompson,* 501 U.S. at 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 . The existence of cause typically turns on whether the petitioner can demonstrate that some objective factor ex-

ternal to the defense hindered counsel's ability to comply with the state's procedural rule. *Murray v. Carrier,* 477 U.S. 478, 487, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

■ To take advantage of the fundamental miscarriage of justice exception, a petitioner must show that a constitutional violation probably resulted in the conviction of one who is actually innocent or that it is more likely than not that no reasonable juror would have convicted him in light of the evidence. *Schlup v. Delo,* 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995); *see also* 28 U.S.C. § 2254(e)(2)(B) (where an applicant has failed to develop the factual basis of a claim in the state court proceedings, a federal court may only hold an evidentiary hearing if the petitioner points to facts sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found him guilty of the underlying offense). Courts construe the fundamental miscarriage of justice exception narrowly. *See, e.g., Sawyer v. Whitley,* 505 U.S. 333, 339, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992).

■ Drain has not demonstrated that "some objective factor external to the defense" obstructed his ability to raise the claims in his "Memorandum in Support of Amended Arguments for Habeas Corpus Petition Relief." Instead, he claims that he has established cause by claiming that his attorney was ineffective. Even if this was enough to establish cause (an issue which the court declines to reach), it is clear that simply alleging ineffective assistance of counsel is not enough to establish prejudice. *See Pitsonbarger v. Gramley,* 141 F.3d 728, 737 (7th Cir.1998). Thus, Drain has failed to establish that the cause and prejudice exception is applicable.

■ Similarly, Drain has failed to invoke the fundamental miscarriage of justice exception to procedural default as he has failed to make the requisite showing of actual innocence. Indeed, an actual inno-

cence claim would be fundamentally inconsistent with Drain's position that "the shooting was not premeditated but occurred simply because Mr. Drain panicked when he thought Gates might be reaching for a gun." § 2254 Petition at 32.[2] In any event, even if this argument was made in the alternative (which does not appear to be the case), Drain has failed to direct the court's attention to evidence showing that, in light of all the evidence, the trier of fact would have, more likely than not, entertained a reasonable doubt of his guilt.

While Drain focuses on his claim—which was rejected by the state court as a fishing expedition—that the investigating officers created a false police report to frame him, a number of witnesses testified against Drain. Specifically, witness Carla Smith testified that Drain confessed to Gates' murder and pressured her to "play dumb" with police; Robert Berry testified that Drain, Jones and Berry plotted to rob Gates, that Drain had a handgun, and that Drain shot Gates; and Lamont Norwood testified that he saw an individual give a gun to either Drain or Jones on the evening of Gates' murder, that he saw the two men leave after getting the gun; and that he then heard a gunshot and saw Gates in an ambulance. The court finds that this record and Drain's arguments fail to rise to the level of a colorable claim of innocence. Accordingly, the fundamental miscarriage of justice exception is inapplicable.

## B. Drain's Claims

Two of Drain's nine claims are cognizable on federal habeas review and survive the hurdles of exhaustion and procedural default: (1) Drain's claim that the trial court violated his right to receive a fair trial when it denied defense counsel's request to subpoena any disciplinary records of the investigating police officers (claim one); and (2) his claim that the trial court erroneously refused to allow his attorney to cross-examine Detective Duffin about the contents of his police report (claim two). For the following reasons, the court finds that Drain is not entitled to relief under § 2254 with respect to these claims.

## 1. Standard of Review

Under the AEDPA, federal courts are forbidden from granting habeas relief with respect to any claim adjudicated on the merits in state court unless the state court's adjudication of the claim: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d)(1) & (2).

 The first prong of § 2254(d)(1)— whether the decision is contrary to Supreme Court precedent—pertains to questions of law. The court reviews core issues of federal law de novo. *Lindh v. Murphy*, 96 F.3d 856, 877 (7th Cir.1996), *rev'd on other grounds*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).[3] The second prong of § 2254(d)(1)—whether the decision is based on an unreasonable application of Supreme Court precedent—"tells federal courts: Hands off, unless the judgment in place is based on an error grave enough to be called 'unreasonable.'" *Id.* at 870. A state court satisfies the reasonableness standard in § 2254(d)(1) if its application of the law to the facts is "at least minimally consistent with the facts and circumstances of the case." *Spreitzer v. Peters*, 114 F.3d 1435, 1442 (7th Cir.1997);

---

2. The court notes that Drain's § 2254 petition is not consecutively numbered. To obviate any potential confusion, the court will cite to the page numbers on Drain's petition.

3. In *Holman v. Gilmore*, 126 F.3d 876, 880 (7th Cir.1997), *cert. denied sub nom. Holman*

*v. Page*, —— U.S. ——, 118 S.Ct. 1169, 140 L.Ed.2d 179 (1998), the Seventh Circuit reaffirmed all aspects of *Lindh* except its holding regarding retroactivity, which was the subject of the Supreme Court's grant of certiorari.

*Hall v. Washington,* 106 F.3d 742, 748–49 (7th Cir.) (a state court meets the reasonableness standard if its "conclusion ... is one of several equally plausible outcomes"), *cert. denied,* —— U.S. ——, 118 S.Ct. 264, 139 L.Ed.2d 190 (1997). With this standard in mind, the court turns to the merits of Drain's claims.

## 2. Disciplinary Records

■■■■■ It is well established that federal courts can grant habeas relief only if the petitioner establishes a violation of federal law. *Haas v. Abrahamson,* 910 F.2d 384, 389 (7th Cir.1990). Because state court evidentiary rulings are matters of state law, they rarely serve as a basis for relief under § 2254. *See id.* Thus, a federal court may grant habeas relief "only in those cases in which the [state] court's evidentiary ruling can be said to have denied the defendant the right to a fundamentally fair trial." *Abrams v. Barnett,* 100 F.3d 485, 493 (1996).[4] In determining whether the exclusion of evidence denied the defendant's right to a "fundamentally fair trial," a court must examine whether the "proffered evidence was relevant, material, and essential to the defense, and whether the exclusion of that evidence was arbitrary." *See Lange v. Young,* 869 F.2d 1008, 1011 (7th Cir.1989).

Drain contends that the trial court erred when it denied defense counsel's request to subpoena any disciplinary records of the investigating police officers. His theory appears to be that the investigating officers fabricated the report implicating him in Gates' death and that, if the officers had been previously disciplined in similar circumstances, those disciplinary reports would undercut their testimony against him. He thus argues that, before denying his request, the trial court should have conducted an in camera review of those records to assess their relevance. Citing

to *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), and *Taylor v. Illinois,* 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988), Drain contends that the trial court's ruling deprived him of his due process right to present a defense using all relevant evidence that might create a doubt as to guilt.

The Illinois Appellate Court rejected this argument and affirmed the trial court's denial of the defense's motion to subpoena the disciplinary records of the investigating officers. In so doing, the Illinois Appellate Court stated that, "[b]efore evidence of any kind is admissible, it must be relevant." *People v. Drain,* No. 91–15436 at 2 (1st Dist., Dec. 29, 1995). The Appellate Court went on to note that the "employment records" of the investigating officers were not relevant since they "had no tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." *Id.* Finally, the Appellate Court stated that, even if the trial court had erred, any such error was harmless. *Id.*

■■■■ This court finds that the state court's evidentiary ruling does not rise to the level of a federal due process violation because it did not deny Drain a fundamentally fair trial. As noted above, the relevance of the evidence is one factor to consider in determining the "fundamental fairness" question. Drain contends that the records were relevant because they supported his theory that the investigating officers falsified the police report, but admitted that he could not demonstrate that the records would be specifically relevant. He also failed to request an in camera inspection of the records to determine their relevance after the trial court quashed his subpoena.

---

4. The court notes that the Supreme Court vacated this decision because it applied the AEDPA's standard of review to a pre-AEDPA § 2254. *Abrams v. Barnett,* 521 U.S. 1114, 117 S.Ct. 2503, 138 L.Ed.2d 1008 (1997). When the case was again before the Seventh

Circuit on remand, the Seventh Circuit adopted its prior discussion regarding the state court's evidentiary rulings and affirmed the denial of § 2254 relief. *Abrams v. Barnett,* 121 F.3d 1036 (7th Cir.1997).

Given the speculative nature of Drain's theory, this court cannot find that the Illinois Appellate Court's finding that the records were not relevant resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as established by the Supreme Court or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding. *See* 28 U.S.C. § 2254(d)(1) & (2). Moreover, the Illinois Appellate Court's decision to exclude this evidence was not arbitrary since it considered Drain's arguments and the applicable law. Therefore, the trial court's evidentiary ruling precluding Drain from obtaining the records did not render his trial fundamentally unfair. Accordingly, Drain's evidentiary claim based on the investigating officer's disciplinary records must fail.

### 3. Limitations on Cross–Examination

Drain also contends that the trial court violated his constitutional right to present a defense and to confront and cross-examine witnesses when it did not permit his attorney to cross-examine Detective Duffin about the contents of his police report. Specifically, Drain argues that the trial court improperly precluded him from asking Detective Duffin whether he had written police reports reflecting Robert Berry's statement that Drain killed Gates and Lisa Dixon's positive identification of Drain as Gates' murderer.

Again, federal courts can grant habeas relief only if the petitioner establishes a violation of federal law. *Haas v. Abrahamson*, 910 F.2d 384 at 389. Where, as here, a defendant claims that an evidentiary ruling violates the Confrontation Clause, the court must be mindful that "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross examination that is effective in whatever way, and to whatever extent the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985). Moreover, trial judges

retain broad discretion to impose reasonable limits on cross-examination for such concerns as "harassment, prejudice, confusion with other issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). Alleged confrontation clause errors are subject to harmless-error analysis. *Id.* at 684, 106 S.Ct. 1431.

In this case, the Illinois Appellate Court found Drain's Confrontation Clause claim "wholly without merit." *See People v. Drain*, No. 91–15436 at 2 (1st Dist. Dec. 29, 1995). In so holding, the Appellate Court reasoned that cross-examining Duffin regarding the contents of his police report would not tend to make any fact of consequence to the determination of the case more or less probable than it would otherwise be. *See id.* It also noted that, even assuming arguendo that the trial court had erred, any such error was harmless.

This court finds that the trial court's limitation of Detective Duffin's cross-examination did not render Drain's trial fundamentally unfair. Critically, the trial court permitted Drain to question Duffin about Berry's statement regarding Gates' murder and about Dixon's identification of Drain—the very matters that Drain contends Duffin falsely included in his police report. In addition, during the trial, Duffin testified that Berry told him that he was with Drain on the date of the murder and that Drain had a gun and shot Gates. Duffin also testified that Lisa Dixon viewed a lineup and identified Drain as Gates' murderer. Both Berry and Dixon's testimony conflicted with Duffin's testimony with respect to these issues.

Therefore, Drain's attorney was able to establish that Duffin's version of events differed from Berry and Dixon's versions without the use of the police report. Moreover, Duffin's testimony was consistent with his police report. Thus, Drain was able to reveal any claimed falsification by Duffin through Duffin's testimony.

Any additional testimony regarding these matters based on the police reports would have been cumulative and thus could not have prejudiced Drain. Accordingly, Drain is not entitled to § 2254 relief with respect to his claim based on the exclusion of the police reports.

### III. Conclusion

Drain's motion for leave to file a reply in support of his petition for a writ of habeas corpus pursuant to § 2254 [50–1] is granted and his request for habeas relief pursuant to § 2254 is denied. The clerk is directed to terminate this case and enter a Rule 58 judgment.