# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 04-3736

ANTHONY GUEST,

*Petitioner-Appellant,*

*v.*

TERRY MCCANN, Warden,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 95 C 5034—**William J. Hibbler**, *Judge.*

ARGUED SEPTEMBER 11, 2006—DECIDED JANUARY 18, 2007

Before RIPPLE, KANNE, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* In this appeal, Anthony Guest asks us to overturn his murder conviction because of his contention that the trial judge was biased and denied him a fair trial. After extensive discovery in the district court, Guest was able to produce substantial evidence indicating corruption on the part of the trial judge. However, Guest has produced no evidence that the judge's corruption tainted his trial. For this reason, as discussed in more detail below, we affirm the judgment of the district court.

## I.  BACKGROUND

In 1983, Anthony Guest was convicted of aggravated battery, unlawful use of weapons, attempted murder, and three counts of murder after a bench trial before Judge Maurice Pompey in the Circuit Court of Cook County, Illinois. At trial, two eyewitnesses testified against Guest. One of the witnesses, Ferris King, was a security guard at the Jewel grocery store where the crimes took place. King testified that he approached Guest and identified himself as a security guard after he observed Guest shoplifting toothpaste. King asked Guest to come with him to the Jewel store's security office, which was in the store's basement. When they reached the security office, Guest refused to be searched and pulled a gun out of his pocket. King stated that Guest could keep the items and began to walk towards the adjoining employee cafeteria, with Guest following him. When the two men entered the cafeteria, three other Jewel employees were already sitting there—Joanne Bailey, Marlean Washington, and Gary Henderson.

After seeing Guest pointing a gun at King, Joanne Bailey attempted to flee. Guest shot at her and missed. King then fired a shot at Guest, but missed, and Guest responded by shooting King in the shoulder. Guest then ran out of the cafeteria and escaped. Later, the body of another Jewel employee, John Geever, was found in the basement, dead as a result of a gunshot wound. No witnesses saw Geever being shot.

Guest had entered the Jewel store with a friend named John Marlow, who was not involved in the shootings. Marlow did not leave the store after Guest fled the scene, but remained and assisted the Chicago Police Department by identifying Guest. The day after the shootings, all four of the Jewel employees who had been in the cafeteria identified Guest in a photo array. Guest remained a

fugitive for a year, but after he was apprehended, King and Washington both identified him in a lineup.

At the trial, both King and Bailey identified Guest as the shooter, and the defense stipulated that the other two Jewel employees would also identify Guest as the shooter. The defense also stipulated Geever had not been killed by a bullet from King's gun.

Judge Pompey sentenced Guest to death by electrocution. On appeal, the Illinois Supreme Court affirmed Guest's sentence, while vacating two of his murder convictions that were legally duplicative. Guest unsuccessfully petitioned the United States Supreme Court for a writ of certiorari, and subsequently filed various state postconviction motions.

In 1997, Guest filed a petition for habeas corpus in the United States District Court for the Northern District of Illinois, raising various claims related to his death sentence and arguing that his right to a fair trial before an impartial judge was infringed and that his trial counsel was constitutionally ineffective. The district court granted Guest extensive discovery on the issue of judicial bias. Guest was allowed to depose Judge Pompey, Pompey's bailiff, Lucius Robinson, and Guest's attorney during his murder trial, Dennis Tobin. He received transcripts from the trial of a corrupt Cook County judge (Judge Thomas Maloney) and FBI investigation materials related to an operation to uncover judicial corruption known as "Operation Greylord."

Operation Greylord uncovered extensive corruption in the Illinois courts, including bribes being paid to multiple judges in exchange for dismissals. Guest's deposition of Robinson and other evidence uncovered during habeas discovery indicated that Judge Pompey had taken numerous bribes in exchange for favorable rulings in criminal cases. Such was the finding of Judge

Hibbler below, who observed that "[e]ven though Judge Pompey's corruption was never exposed in a public trial, Guest's counsel has unearthed a considerable amount of distressing evidence that casts serious doubt on Judge Pompey's integrity."

In 2002, then-Governor George Ryan granted Guest clemency with regard to his execution, mooting the death penalty-related claims in the original habeas petition. Guest filed an amended habeas petition in 2003, asserting only the ineffective assistance of counsel claim and the judicial bias claim. The district court denied the petition on March 24, 2004. Guest now appeals only the district court's judgment on the judicial bias claim.

## II.  ANALYSIS

### A.  Procedural Default and Exhaustion

The respondent argues that Guest's judicial bias claim is procedurally barred as a result of his failure to present it in state court. Under 28 U.S.C. § 2254, before a state habeas petitioner is allowed to pursue his claims in federal court, he must exhaust his remedies in the state courts. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 842-46 (1999) ("state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"). In Illinois, this means that a petitioner must have directly appealed to the Illinois Appellate Court and presented the claim in a petition for leave to appeal to the Illinois Supreme Court. *See id*. If a habeas petitioner has not exhausted a claim, and complete exhaustion is no longer available, the claim is procedurally defaulted. *See id*. at 848.

Guest did not present his judicial bias claim to the Illinois state courts and there is no longer time to do so.

This means that his claim is defaulted unless he can demonstrate either cause for the default and prejudice or that ignoring the default is necessary to prevent a fundamental miscarriage of justice. *See Badelle v. Correll*, 452 F.3d 648, 661 (7th Cir. 2006). The district court concluded that Guest had demonstrated cause for the failure because the details of Judge Pompey's corruption did not surface until Judge Maloney's 1993 corruption trial, one year after Guest filed his appeal to the Illinois Supreme Court. The district court rejected the respondent's argument, raised again here on appeal, that Guest was put on notice by a newspaper article in 1983 that suggested corruption on the part of Judge Pompey, a grand jury subpoena of Judge Pompey's records, and a statement made in a television report linking Judge Pompey to Operation Greylord.

In order to demonstrate cause for failure to exhaust, Guest must demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *See McCleskey v. Zant*, 499 U.S. 467, 493 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478 (1986)). The Court in *McCleskey* identified three types of "objective factors" that would constitute sufficient cause: (1) "interference by officials that makes compliance . . . impractical"; (2) constitutionally ineffective assistance of counsel; and (3) "a showing that the factual or legal basis for a claim was not reasonably available to counsel." *Id.* The third factor is applicable here. The scattered news items and court filings identified by the respondent were insufficient to put Guest on notice. We cannot say that the factual basis for a judicial bias claim was "reasonably available" to counsel on the basis of the items cited by the respondent. A prisoner is not necessarily expected to be aware of even the most obscure news stories which might expose the basis for a claim of unconstitutional imprisonment. The district

court did not address the question of actual prejudice, and we need not either since it is effectively subsumed by Guest's substantive claim. There is no harmless error in a judicial bias case. *See Bracy v. Schomig*, 286 F.3d 406, 414 (7th Cir. 2002).

However, the respondent also argues that Guest could have returned to the state courts after the discovery of new evidence under the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1 et seq. and advances this as a secondary argument for procedural default. We need not reach this argument because, as explained in detail below, even under the more liberal standard of review applicable where we address issues not adjudicated by the state courts, it is clear that Guest's judicial bias claim fails on the merits.

## B.  Judicial Bias Claim

In adjudicating section 2254 claims, we are generally bound by the deference requirements of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Pursuant to AEDPA, a state habeas petitioner can succeed if he demonstrates that the state court judgment was either contrary to or an unreasonable application of federal law. 28 U.S.C. § 2254(d)(1). However, for the reasons discussed above, in this case there is no state court decision on the merits of the issue at hand. We are thus required to "dispose of the matter as law and justice require." *See Harrison v. McBride*, 428 F.3d 652, 665 (7th Cir. 2006) (citing 28 U.S.C. § 2243). To qualify for a writ of habeas corpus, Guest must demonstrate that "he is in custody in violation of the Constitution or laws or treaties of the United States." *See id.* at 665 (quoting 28 U.S.C. § 2254).

The Supreme Court has observed that "[a] fair trial in a fair tribunal is a basic requirement of due process." *In re*

*Murchison*, 349 U.S. 133, 136 (1955); *see also McBride*, 428 F.3d at 667 ("Fairness of course requires an absence of actual bias in the trial of cases . . ."). As we stated in *McBride*, "due process is violated when a judge presides in a case that 'would offer a possible temptation to the average man . . . to forget the burden of proof required to convict the defendant' or would 'lead him not to hold the balance nice, clear, and true between the state and the accused.'" *Id.* (quoting *Tumey v. State of Ohio*, 273 U.S 510 (1927)).

Guest alleges that Judge Pompey's rulings were unduly harsh, exhibiting bias; he specifically identifies Judge Pompey's actions: (1) "inducing Guest to waive his Sixth Amendment right to a jury trial"; (2) "failing to determine that Guest's waiver was [not] knowing and voluntary"; (3) "failing to declare a mistrial or, alternatively, a continuance for a hearing to determine what happened to possibly exculpatory evidence"; (4) "curtailing cross-examination of a State witness on key testimony about the timing and duration of critical events"; and (5) "returning guilty verdicts on multiple counts of murder (and refusing to provide specific findings of fact) notwithstanding a weak case from the State and inexplicably missing evidence."

The gravamen of Guest's judicial bias claim is that as Operation Greylord approached a climax and Judge Pompey became aware of his possible indictment, he sought to bolster his conviction statistics by exhibiting bias *against* the defendants in certain of his cases in which he had not accepted bribes. This "compensatory bias" theory, which reaches deep into the very psyche of Judge Pompey for its essential premise, depends on four principal types of evidence uncovered by Guest during his investigation: (1) testimony from Robinson (Judge Pompey's bailiff) that he passed bribes to Judge Pompey on "hundreds" of occasions; (2) testimony from a former

federal prosecutor involved in Operation Greylord that Judge Pompey was involved in significant corruption; (3) evidence from FBI files implicating Judge Pompey as a bribe-taker; and (4) evidence from the U.S. Attorney's Office files implicating Judge Pompey. We need not engage in an exhaustive discussion of this evidence. It is clear from the record that, as Judge Hibbler found, Judge Pompey was almost certainly involved in significant bribe-taking and corruption during his time on the bench.[1] The only major source of factual disagreement on this point between the district court and Guest stems from the district court's conclusion that there was little evidence of corruption around the time of Guest's trial. Judge Hibbler found that most of the evidence related to an earlier period in Judge Pompey's career—the time when he was presiding over the Cook County preliminary hearing courtroom. Guest argues that the evidence suggests that Judge Pompey was engaged in bribe-taking contemporaneously with his trial.

The district court relied on our decision in *Bracy v. Schomig*, 286 F.3d 406, 408 (7th Cir. 2002),[2] in concluding that Guest's evidence was insufficient to succeed on his compensatory bias claim. In *Bracy*, this court, sitting *en banc*, vacated the sentences but allowed the convic-

---

[1] Indeed, in *Bracy v. Gramley*, the United States Supreme Court took note of the evidence against Judge Pompey that surfaced in the investigation of Judge Maloney. 520 U.S. 899, 907 n. 7 (1997) ("The Government introduced evidence that Maloney regularly bribed Judge Maurice Pompey and Cook County Deputy Sheriff Lucius Robinson (who would later serve as Maloney's 'bag man')").

[2] *Bracy v. Schomig* was decided on remand from the Supreme Court, which reversed our earlier decision and found that the petitioners were entitled to discovery on their bias claims. *See Bracy v. Gramley*, 520 U.S. at 908-09.

tions to stand of two individuals who were tried before Judge Maloney. Unlike Judge Pompey, Judge Maloney was actually convicted of taking bribes, and his conviction was for activity that occurred contemporaneously with the petitioners' trials. The petitioners in *Bracy* asserted the same type of compensatory bias theory asserted here by Guest. Just as the district court concluded with respect to Judge Pompey in the instant case, we found in *Bracy* that "Maloney is not entitled to the usual presumption that ordinarily informs judicial bias cases—a presumption that public officials have 'properly discharged their official duties.'" *Id.* at 409 (quoting *United States v. Chem. Found.*, 272 U.S. 1, 15 (1926)). Nevertheless, we concluded that "the fact that Maloney was so exceedingly corrupt does not support a *per se* finding that every case over which he presided was infected." *Id.* at 410. We observed that a petitioner pressing a judicial bias claim must demonstrate that the judge was "actually biased in petitioner's own case." *Id.* (quoting *Bracy v. Gramley*, 520 U.S. at 909).[3] In attempting to do so, the petitioners in *Bracy* pointed out minor unfavorable rulings on various evidentiary issues. We observed that "[f]indings of this sort, which judges often make favoring a law enforcement version of conflicting events, do not support a claim of actual bias." *See id.* at 415.

*Bracy* dictates that Guest's claims must fail. At both ends of the case, Guest's judicial bias claim is weaker than

---

[3] Judge Evans's opinion for the court, sitting *en banc*, also noted that there was substantial disagreement within the court on several questions related to the meaning of this phrase (Judges Posner and Rovner both filed opinions concurring in part and dissenting in part, with five other judges joining these separate opinions). *Bracy v. Schomig*, 286 F.3d at 409. However, none of the disagreement referenced by Judge Evans's opinion is relevant to the resolution of this case.

that of the petitioners in *Bracy*. There was substantially more evidence of corruption on the part of Judge Maloney (contemporaneous corruption) than Judge Pompey, and Guest has not introduced anything in the manner of a suspicious evidentiary ruling pointing to "actual bias" in his case. It is circular for Guest to argue that Judge Pompey's decision to return a guilty verdict is evidence of bias, particularly when overwhelming evidence of his guilt was admitted at the trial. This evidence included: (1) the live testimony of King and Bailey that Guest was the shooter in the basement; (2) the stipulated identifications of Guest by the other two Jewel employees; (3) testimony that all four Jewel employees identified Guest in a photo array the day after the shootings; and (4) the stipulated firearm analysis indicating that security guard King's gun (the only other gun that was fired in the basement) was not the source of the bullet that killed Geever. At the conclusion of the trial, the prosecution had certainly proved Guest's guilty beyond a reasonable doubt.[4]

Similarly, even assuming that Robinson induced Guest to waive his right to a jury trial, Robinson's actions would not demonstrate bias on the part of Judge Pompey. Actions that are inexplicable in the absence of a questionable motive constitute circumstantial evidence of judicial bias. But Robinson may have truly believed that Guest was more likely to receive a favorable ruling from Judge Pompey than from a jury. Even if he did not believe this, his motivations tell us nothing about the bias of Judge Pompey. Guest cannot point to any evidence in the record supporting the theory that Robinson induced the

---

[4] We do not see any inherent evidence of bias in Judge Pompey's failure to make specific findings of fact with regard to Guest's guilt, particularly where, as here, the evidence was overwhelming. Guest's brief fails to cite any authority indicating that Judge Pompey flouted any Illinois procedural requirements.

jury waiver in order to make Guest a sacrificial lamb to Judge Pompey's alleged image-building campaign. Relatedly, Guest has not demonstrated that Judge Pompey should have recognized that his jury waiver was involuntary.

The potentially exculpatory "missing evidence" that Guest alleges should have caused Judge Pompey to declare a mistrial consists of a "missing bullet" from a shooting spree Guest engaged in on the day of the murder. The witnesses against Guest testified that he repeatedly fired his gun haphazardly around the Jewel store that was the scene of the crime. Guest argues that testimony at his trial revealed that one of the bullets fell from the security guard he shot while the guard was being treated, and that someone, perhaps a police officer or a doctor, picked it up. The bullet was never retrieved or produced in discovery. Guest argues that we can glean that Judge Pompey was biased from his failure to declare a mistrial. But Guest has uncovered no evidence that the State was ever in possession of the bullet. Moreover, even if the bullet had been retrieved and lost by the State, it had little or no evidentiary value. Scientific examination of the slug would have yielded no information that could contradict Ferris King's testimony that he saw Guest shoot the bullet into his body.

Lastly, Guest points to a series of irrelevant questions that his attorney attempted to ask one of the witnesses that were not allowed by Judge Pompey. The questions Guest identifies are all either irrelevant, inconsequential, or exhibit improper form (*e.g.*, "What did you have for lunch on the day of the shooting?"). The failure to allow them in no way demonstrates bias.

At bottom, all of Guest's allegations and evidence in support thereof do not amount to a successful claim of judicial bias. This case presents an argument almost

identical to that in our decision in *Bracy*, the distinction being that Guest has an even weaker case. The *Bracy* petitioners could not succeed in demonstrating bias sufficient to overturn their convictions, and neither can Guest.

### III.  CONCLUSION

The judgment of the district court is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*