In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-2713

JESSE SMITH,

*Petitioner-Appellant,*

*v.*

DONALD GAETZ, WARDEN,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 C 5450—**John W. Darrah**, *Judge.*

ARGUED DECEMBER 8, 2008—DECIDED MAY 4, 2009

Before EASTERBROOK, *Chief Judge*, and BAUER and
SYKES, *Circuit Judges*.

BAUER, *Circuit Judge*. Jesse Smith was convicted of first
degree murder and three counts of attempted murder
on August 31, 1992, following a bench trial in the
Circuit Court of Cook County. His conviction was
affirmed on direct appeal. Believing that his trial and
appellate counsel rendered ineffective assistance, Smith
has been pursuing a writ of habeas corpus under 28 U.S.C.
§ 2254. The district court denied his petition as procedur-

ally defaulted, but certified for appeal the issues of his trial and appellate counsel's alleged ineffectiveness. For the following reasons, we affirm the denial of Smith's habeas petition.

## I. BACKGROUND

We have reviewed this case before. *See Smith v. Battaglia*, 415 F.3d 649 (7th Cir. 2005). Much of the lengthy and somewhat convoluted procedural history that we detailed in that opinion remains relevant to this review and thus, we borrow heavily from it here.

Smith found himself in Illinois's Stateville Correctional Center for his part in a shooting incident in February 1991. Three assailants, including Smith, fatally shot Charlotte Wilson and wounded Jerome Wilson and two onlookers. Smith and a co-defendant went to trial in a joint bench trial in August 1992. Smith was represented by Attorney Lawrence Vance. Vance began by telling the judge that the evidence would show that Smith was home on the evening in question with his female partner, who would be a witness in the case. This was the only defense Vance ever mentioned, but mysteriously, at the trial he did not call Smith's partner, Carol Brown, as an alibi witness, even though she was in the courtroom and ready to testify that Smith had been with her at all relevant times. Jerome Wilson did testify, and he identified Smith as one of the shooters. (Years later, in April 1999, Wilson recanted this testimony in a sworn affidavit, in which he averred that he "did see the person who

shot Charlotte Wilson and myself on the night of February 1, 1991, and it absolutely was not Jesse Smith." Later, it seems, Wilson recanted the recantation, and so it is hard to say what story Wilson would give now.)

The court found Smith guilty of one count of first-degree murder, for which it sentenced him to an extended term of 80 years' imprisonment, and three counts of attempted first-degree murder, for which it imposed concurrent terms of 30 years each. The judgment of conviction was entered on December 14, 1992. Smith appealed, arguing only that the evidence did not show beyond a reasonable doubt that he was guilty and that his sentence was excessive. He was unsuccessful; the state appellate court rejected his arguments, *see People v. Barnes and Smith,* 1994 WL 16175575 (1994), and on October 4, 1995, the Illinois Supreme Court denied his petition for leave to appeal. He had until January 2, 1996, to file a petition for *certiorari* in the United States Supreme Court, but it appears that he did not do so.

Smith filed his *pro se* petition for state post-conviction relief, see 725 ILCS 5/122-1, on January 12, 1996, ten days after the time for seeking *certiorari* had expired. In it, he claimed, among other things, that he had been denied his Sixth Amendment right to the effective assistance of both trial and appellate counsel (different lawyers) with regard to his alibi defense. In March 1996, the state circuit court dismissed the petition. It first found that the petition was untimely

under 725 ILCS 5/122-1(c). . . . It went on, however, to hold in the alternative that Smith had waived his claim of ineffective assistance of trial counsel because his appellate counsel failed to raise the point on appeal. It said nothing specific about appellate counsel's possible ineffectiveness for this oversight, but it finally examined the merits of the Sixth Amendment claims and held that neither one of Smith's lawyers had performed inadequately.

After Smith appealed the circuit court's order, his appointed counsel moved to withdraw, citing *Pennsylvania v. Finley,* 481 U.S. 551, 107 S. Ct. 1990, 95 L. Ed.2d 539 (1987). Smith objected, arguing that the circuit court had erred by finding that his lawyers were not ineffective. The appellate court granted counsel's motion, stating in relevant part:

> "The scope of post-conviction review is limited by the doctrines of res judicata and waiver which affect all claims actually presented in the direct appeal as well as those which could have been, but were not. Defendant's assertions of ineffective assistance of trial counsel and the trial court's prejudice are foreclosed under these principles, and defendant's remaining allegations were either refuted by the record or insufficient to require further proceedings under the Act. In addition, defendant's petition may be considered untimely under the amended statute, and the shortcomings of his post-conviction appellate counsel do not present a basis for granting the relief sought."

*Illinois v. Smith*, No. 91 CR 1754, slip op. at 3 (Ill. App. Ct. Nov. 14, 1996) (unpublished decision) (internal citations omitted). The Supreme Court of Illinois granted Smith's motion for leave to file a late appeal, but denied the petition for leave to appeal on October 1, 1997.

On August 28, 1998, Smith filed a *pro se* petition for a writ of habeas corpus in the federal court under 28 U.S.C. § 2254, again arguing that his trial and appellate counsel provided ineffective assistance. In an order dated August 11, 1999, Judge Bucklo held that Smith had raised these claims throughout his post-conviction proceedings and appointed a lawyer to represent him. The case was then administratively transferred to Judge Darrah, who granted his request for an evidentiary hearing in August 2001. At the hearing, Carol Brown (the partner) testified that Vance, Smith's trial attorney, told her that she did not need to testify even though she was present at the trial. Vance did not testify, but the parties stipulated that he would have said that he could not remember why he did not call Brown as a witness.

After the hearing, the state moved to dismiss Smith's petition as time-barred. The district court found that Smith's state post-conviction petition was indeed not properly filed because it was late, and thus that his § 2254 petition also came too late. It dismissed the petition in an order dated September 28, 2002. The court later granted Smith's request for a certificate of appealability, which included the antecedent

procedural question whether the state post-conviction proceeding was untimely and the constitutional question whether Smith received effective assistance of trial and appellate counsel. *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000).

On appeal, this court reversed the district court's dismissal of Smith's habeas petition. We held that the petition was timely because the Illinois Appellate Court's language concerning the timeliness of Smith's post-conviction petition was ambiguous and could not be read as an independent ground for dismissal. We reasoned that the time available for Smith to file his habeas petition had tolled during the pendency of his state post-conviction proceeding and, accordingly, his habeas petition was not untimely.

We noted further, however, that Smith wasn't necessarily out of the woods. The State had argued that Smith faced an additional procedural bar with respect to his claim of ineffective assistance of trial counsel due to the Illinois Appellate Court's finding on post-conviction review that he had waived that argument by failing to raise it on direct appeal. On remand, the State advanced this argument, contending that Smith's claim was procedurally defaulted because there existed an independent and adequate state ground barring federal habeas review. The district court agreed and denied Smith's habeas petition.

Smith again sought and obtained a certificate of appealability. This time, the issues certified for appeal were constitutional in nature: (1) whether Smith's trial counsel was ineffective for failing to call an alibi witness and

present an alibi defense; and (2) whether Smith's appellate counsel was ineffective for failing to raise the issue of trial counsel's ineffectiveness on direct appeal.

## II. DISCUSSION

Smith first contends that his Sixth Amendment right to counsel was violated by his trial counsel's negligent failure to call Carol Brown to testify.

We review *de novo* the district court's denial of a habeas petition. *Ben-Yisrayl v. Buss*, 540 F.3d 542, 546 (7th Cir. 2008). Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), we may grant habeas relief only if the state court's "decision was contrary to, or involved an unreasonable application of, Supreme Court precedent," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor,* 529 U.S. 362, 376 (2000).

As a threshold matter, we must determine whether Smith has procedurally defaulted his claims of ineffective assistance of trial and appellate counsel. The State asserts that the Illinois Appellate Court's application of the waiver doctrine prohibits further review because state procedural rules are independent of federal law and not subject to a habeas challenge. The State further contends that Smith has also procedurally defaulted his ineffective assistance of appellate counsel claim because he failed to raise it during one complete round of state court review. We review *de novo* a district court's determination of

procedural default. *Lee v. Davis*, 328 F.3d 896, 899 (7th Cir. 2003).

"In general, federal courts cannot review on petition for writ of habeas corpus questions of federal law that have not been properly presented to the state court." *Willis v. Aiken*, 8 F.3d 556, 560-61 (7th Cir. 1993). If a state court did not reach a federal issue because it applied a state procedural rule, the matter is closed to the federal habeas court unless the petitioner can show both cause and prejudice. *Id*. The Illinois Appellate Court was the last state court to consider Smith's claim of ineffective assistance of trial counsel; it ruled that the issue was waived because, although available to Smith on direct appeal, he did not raise it. Where, as here, the state court declined to review an issue that was not properly preserved, "the state court decision rests upon a ground that is both independent of the federal question and adequate to support the judgment." *Willis,* 8 F.3d at 561 (internal quotations and citation omitted).

Smith does not make a formal cause and prejudice argument in his briefs. However, he contends that his appellate counsel's failure to raise the claim of ineffectiveness of trial counsel on direct appeal was itself ineffective assistance that should excuse his procedural default. "Attorney error that constitutes ineffective assistance of counsel is cause to set aside a procedural default." *Franklin v. Gilmore*, 188 F.3d 877, 883 (7th Cir. 1999).

There remains, however, an additional procedural problem. "[T]he assertion of ineffective assistance as a

cause to excuse procedural default in a § 2254 petition, is, itself, a constitutional claim that must have been raised before the state court or be procedurally defaulted." *Lee*, 328 F.3d at 901. "The result is a tangled web of defaults excused by causes that may themselves be defaulted and require a showing of cause and prejudice—a result that has an 'attractive power for those who like difficult puzzles.'" *Id*. (quoting *Edwards v. Carpenter*, 529 U.S. 446, 458 (2000)) (Breyer, J., concurring).

For Smith's purposes, this means that he was required to raise the claim at each level of state court review: in his initial post-conviction petition before the trial court, in his appeal to the Illinois Appellate Court, and in his Petition for Leave to Appeal (PLA) to the Illinois Supreme Court. *See Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007). We consider here the State's contention that Smith failed to properly raise appellate counsel's ineffectiveness in his PLA.

Smith's PLA makes numerous references to his counsel's alleged shortcomings, including a charge that, "the representation by Appellate counsel was to say the least a farce." However, context makes clear that these grievances pertain solely to his post-conviction appellate counsel and do not concern the representation he received on direct appeal. The petition is absent any assertion that his failure to raise the claim of ineffectiveness of trial counsel on direct review was due to his appellate counsel's ineffectiveness.

Smith does not argue that his failure to raise the claim should be excused based on cause and prejudice; he

merely maintains that it was in fact raised. His contention is refuted by the record and, therefore, we find that Smith's ineffective assistance of appellate counsel claim is procedurally defaulted.

However, even assuming that Smith had preserved his ineffective assistance of appellate counsel claim, he can prevail now only if he establishes that his appellate counsel failed to raise an issue that was both obvious and clearly stronger than the issues he did raise. *Kelly v. United States*, 29 F.3d 1107, 1112 (7th Cir. 1994). This he cannot do.

On appeal, Smith's appellate counsel made two arguments: (1) that Smith was not proven guilty beyond a reasonable doubt; and (2) that his sentence was excessive. Raising trial counsel's ineffectiveness would have required meeting the rigorous standards set forth in *Strickland v. Washington,* 466 U.S. 668, 687-88 (1984). Under *Strickland,* one must show that trial counsel's performance fell below an objective standard of reasonableness and that prejudice resulted. *Id*. Review of trial counsel's performance "must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. at 689. A petitioner must "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.*" Id.* (internal quotations omitted).

Smith argues that the ineffective assistance of trial counsel claim was clearly the strongest argument that

could have been raised on his behalf. But a review of trial counsel's performance suggests otherwise.

Considered alone, Vance's decision not to call Brown as an alibi witness, especially after having announced his intentions to do so during opening arguments, appears problematic. Yet the *Strickland* analysis requires that we review counsel's performance as a whole. *Raygoza v. Hullick*, 474 F.3d 958, 963 (7th Cir. 2007). In doing so, it must be noted that we are somewhat hindered by an incomplete record. The record does not include a statement Smith purportedly made to police that may have conflicted with Brown's anticipated in-court testimony concerning Smith's whereabouts that night. We know only that Vance alluded to such an inconsistency during his opening statement before stating that he believed "both accounts" could be reconciled. We note that it is the petitioner's burden to furnish this court with a record that supports his assertions. Fed. R. App. P. 10; *Andrews v. United States*, 817 F.2d 1277, 1281 (7th Cir. 1987); *United States v. Saykally*, 777 F.2d 1286, 1288 n.3 (7th Cir. 1985). The record Smith presents here does not permit us to fully consider the strength of the alibi and, to the extent that the omission limits our review of counsel's competency, it is harmful only to Smith's claim.

In any event, before Vance could have called Brown to testify, he was forced to contend with the testimony of the State's key witness, Jerome Wilson. The shooting involved three assailants; all three men were dressed in black and wearing hoods. In addition to Wilson and deceased Charlotte Wilson (Charlotte), who was fatally

shot, two other onlookers were wounded. Wilson was the only witness who could identify two of the assailants, Smith and co-defendant Barnes who were tried together.

On direct examination, Wilson testified that he was able to view Smith from approximately thirteen feet away for an extended period of time in a well-lit area. Throughout this time, his attention was focused on Smith. After Smith shot Charlotte, Wilson spoke to him. Smith then pulled back his hood, allowing Wilson to see his face. Smith fired the gun at Wilson, hitting him in his left side. Wilson was close enough in proximity to Smith to identify the gun, describing it as a revolver with a "black pearl handle." Wilson then ran, but could not continue on and fell to his knees, where he remained for approximately ten minutes. He heard more shots, looked into a nearby breezeway, and saw co-defendant Barnes shooting a gun.

Before his in-court identification, Wilson had identified Smith as the shooter from a photo array on the day after the attack and again from a line-up approximately twenty-five days later.

Vance attempted to impeach Wilson's credibility on cross-examination. He brought out several discrepancies regarding the distances Wilson said he ran while attempting to flee from the shooters. In addition, he confronted Wilson with prior statements that were inconsistent with his direct testimony. For instance, during direct examination, Wilson had provided a fairly detailed description of the gun Smith fired. When questioned by Vance,

Wilson conceded that he had told police that he could not recall what type of weapon Smith carried that night. Vance also highlighted the apparent lack of motive for the murder, eliciting Wilson's acknowledgment that Smith had "no reason to harm" the victims that night and that there was "no apparent reason" for the shooting.

So, the trial record establishes that Vance's attempts to discredit the reliability of Wilson's account of events had yielded some gains. Calling Brown to testify would have risked undermining those gains.

Brown's affidavit provides scant detail concerning Smith's whereabouts, stating only that Smith was with her during "the time in question." She offered neither a specific time frame nor a location. Although it cannot be known precisely what Brown would have said if she had testified, her affidavit does not suggest that she was prepared to deliver an air-tight alibi. Moreover, as the district court noted, any alibi Brown provided was prone to be viewed as biased. Brown was Smith's live-in girl-friend and the couple had children together.

If Vance had called Brown to testify, he would have subjected her to the crucible of cross-examination. In the event that the State was able to tarnish Brown's alibi as vague, biased, or unsubstantiated, the judge might have rejected it as unreliable. Conversely, left alone, the absence of a clear motive for the murder combined with the inconsistencies in Wilson's testimony gave Vance a reasonable doubt defense on which to stand.

It appears to us that counsel made a tactical decision. It is not this court's role to play Monday-morning quarter-

back concerning which was the better of two viable trial strategies. After all, it is "all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689. Rather than ask the court to believe a seemingly flimsy alibi, Vance elected to hold the State to its high burden of proof after having attempted to cast some doubt on the State's best identification witness. In our view, Smith fails to overcome the presumption that Vance's omission was in fact a strategic one. We find that Vance's tactics fell within the wide range of reasonable professional assistance. Accordingly, Smith's appellate counsel did not render ineffective assistance by failing to raise trial counsel's alleged ineffectiveness, an issue that was not clearly stronger than those issues he did raise.

Because Smith cannot show cause and prejudice, the Illinois Appellate Court's application of its own procedural rule (waiver) constitutes an independent and adequate ground to support its judgment, and the matter is closed to federal habeas review.

### III. CONCLUSION

For the reasons set forth above, we AFFIRM the district court's denial of Smith's habeas corpus petition.